Barbara QUARTANA, Appellant,

v.

John D. UTTERBACK d/b/a All Star Dairy Association, Inc., Appellee.

No. 85–1613.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1986.

Decided April 30, 1986.

Rehearing Denied June 6, 1986.

Terry A. Bond, St. Louis, Mo., for appellant.

Wilbur L. Tomlinson, St. Louis, Mo., for appellee.

Before HEANEY, ARNOLD, and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Barbara Quartana brought this suit in the Circuit Court of the City of St. Louis, Missouri, alleging that John D. Utterback had made libelous statements about her in a letter to her employer, Sealright Co., Inc.

Quartana was a salesperson for Sealright, and one of her customers was Mama Tish's Enterprises. Utterback is an officer of All Star Dairy Association, Inc. All Star is a high-volume purchaser of packaging products from Sealright, and as such receives a volume discount from Sealright. In mid-1983, Quartana persuaded Utterback to permit Mama Tish's to bill its Sealright purchases through All Star so that Mama Tish's could receive the discount. Eventually, All Star had difficulty collecting from Mama Tish's. Utterback wrote Sealright about the problem in a letter which is now the subject of Quartana's complaint. Sealright later fired Quartana as a result, she contends, of statements made in Utterback's letter.

On February 1, 1985, Utterback removed the action to the United States District Court for the Eastern District of Missouri; at the same time he filed a motion to dismiss the complaint for failure to state a claim. Quartana filed a response on February 11, and on February 25, 1985, the District Court issued an order and an opinion granting Utterback's motion to dismiss.

Eight days later, on March 5, 1985, Quartana filed a motion for leave to amend her complaint, citing Federal Rule of Civil Procedure 15(a), and submitted her First Amended Complaint. The First Amended Complaint made several additions and modifications to her libel claim and introduced a new claim for tortious interference with contractual relations based on the same events as the libel claim. On March 20 and again on March 27, 1985, Quartana filed motions to set aside and vacate the order of dismissal; the first motion cited Rule 60 of the Federal Rules of Civil Procedure, and the second cited no rule.

In an April 12, 1985, opinion and order, the District Court denied all of Quartana's motions, stating that the First Amended Complaint still failed to state a claim for libel and that "the interests of justice" militated against considering the tortious interference claim "in the present action." In discussing its denial of leave to amend, the District Court also stated that its February 25, 1985, order 609 F.Supp. 72 had been meant to be and was a final judgment. On May 9, 1985, Quartana filed her notice of appeal to this Court.

The issues raised here are: (1) whether Quartana's appeal was timely, and (2) whether the District Court properly dismissed Quartana's libel and tortious-interference-with-contract claims. We hold that Quartana's notice of appeal was timely and reverse the decision of the District Court, concluding that Quartana has stated claims for libel and tortious interference with contractual relations.

## I.   TIMELINESS OF THE APPEAL

Federal Rule of Appellate Procedure 4(a) provides that the notice of appeal in civil cases must be filed within 30 days of the entry of the judgment or order appealed from. Utterback maintains that Quartana failed to meet this requirement because her May 9 notice of appeal came more than 30 days after the District Court's February 25 order of dismissal.

### A.   Finality of the February 25 Order

Quartana's first response to this argument is that the February 25 order of dismissal was not a final, appealable judgment. She maintains that instead, the order dismissed only her complaint and not her action, arguing that it was still open to her to save her action by amending her complaint. Quartana emphasizes that the order does not specifically state that it is a final judgment, that her action is dismissed, or that she does not have leave to amend her complaint. She concludes that no final judgment was entered until the District Court issued its April 12 order, less than 30 days before her May 9 notice of appeal.

We agree with Quartana that "[g]enerally, there is no final order for purposes of appellate review where the complaint, but not the action, is dismissed." *Local 179, United Textile Workers v. Federal Paper Stock Co.,* 461 F.2d 849, 850 (8th Cir.1972). The question here, however, is one not yet considered by this Court: how to construe a dismissal order that does not explicitly state whether it is a final order, whether it is a dismissal of the action, or whether leave to amend is granted. Other circuits confronted with this question have adopted different views. The Second Circuit has held that, unless leave to amend is explicitly granted, the dismissal is a final, appealable order. *Weisman v. LeLandais,* 532 F.2d 308, 309 (2d Cir.1976). The Ninth Circuit has reached the opposite conclusion, holding that there is no final order where the trial court dismisses a complaint without expressly dismissing the action or making clear that the action cannot be saved by amending the complaint. *Firchau v. Diamond National Corp.,* 345 F.2d 269, 270–271 (9th Cir.1965). The Eleventh Circuit has adopted an "intermediate approach," holding that such an order of dismissal is not final if "the plaintiff could not have been reasonably expected to realize that the court was entering a final order." *Czeremcha v. International Association*

*of Machinists and Aerospace Workers, AFL–CIO,* 724 F.2d 1552, 1555 (11th Cir. 1984).[1]

Where matters of finality (and therefore of appellate jurisdiction) are concerned, we believe it preferable to adopt rules that promote clarity and certainty. The Second and Ninth Circuit rules have an advantage over that of the Eleventh Circuit in this regard because they focus solely on the language of the dismissal order, requiring an explicit contrary statement to avoid a presumption of finality (Second Circuit) or non-finality (Ninth Circuit). Comparing the Second and Ninth Circuit rules, that of the Second Circuit commends itself because it avoids confusion over when a plaintiff's right to amend a dismissed complaint terminates, the order becomes final, and the time for appeal begins to run. We thus conclude that the better view is that of the Second Circuit, and therefore that the February 25 order was final and appealable.[2]

In our estimation this rule does not deprive plaintiffs of anything. They remain free where dismissal orders do not grant leave to amend to seek vacation of the judgment under Rules 59 and 60 of the Federal Rules of Civil Procedure and offer an amended complaint in place of the dismissed complaint.[3]

### B. Tolling the Time for Appeal—Rule 59(e) Motions

This brings us to Quartana's second response to Utterback's timeliness argument. Quartana notes that under Fed.R. App.P. 4(a)(4), if a timely motion is made under Fed.R.Civ.P. 59(e) to alter or amend the judgment, the time for appeal is measured from the entry of the order ruling on this motion. She further observes that her motion for leave to amend her complaint was filed within the ten-day period for filing Rule 59(e) motions, and argues that this motion should be considered a Rule 59(e) motion to alter or amend the judgment. Since this motion was not denied until the April 12 order was issued, Quartana's appeal would then be timely.

We are persuaded by this argument. "[A]ny motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label." 9 Moore's Federal Practice, ¶ 204.12[1] (2d ed. 1985). See *Seshachalam v. Creighton University School of Medicine,* 545 F.2d 1147 (8th Cir.), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1093 (1977); *Moore v. St. Louis Music Supply Co.,* 526 F.2d 801 (8th Cir. 1975). Quartana's motion to amend her complaint was such a motion; in order to grant the motion, the District Court would have had to set aside and vacate its dismis-

1. The Second Circuit has noted that the difference between it and the Ninth Circuit on this question is linked to their divergent views on another matter: the status of the right to amend under Fed.R.Civ.P. 15(a) after a complaint has been dismissed. See *Elfenbein v. Gulf & Western Indus., Inc.,* 590 F.2d 445, 448 n. 1 (2d Cir.1978). The Ninth Circuit has held that since a motion to dismiss is not a responsive pleading within the meaning of Rule 15(a), a complaint may be amended once as a matter of right even after a motion to dismiss has been granted. *222 East Chestnut Street Corp. v. Lakefront Realty Corp.,* 256 F.2d 513, 515 (7th Cir.), *cert. denied,* 358 U.S. 907, 79 S.Ct. 232, 3 L.Ed.2d 228 (1958). The Second Circuit has concluded that the right to amend terminates upon the grant of a motion to dismiss. *Swan v. Board of Higher Education of the City of New York,* 319 F.2d 56, 60–61 (2d Cir.1963). This Court has also held that the right to amend under Fed.R.Civ.P. 15(a) terminates upon dismissal. *Dorn v. State Bank of Stella,* 767 F.2d 442, 443 (8th Cir.1985). While

this holding may not preclude us from disagreeing with the Second Circuit on the present question, see *Czeremcha,* 724 F.2d at 1554–1556 (holding that dismissal terminates the right to amend but adopting an intermediate approach to finality), it provides further support for our decision to follow the Second Circuit here.

2. Our conclusion that the February 25 order was final is bolstered by the fact that the order was set forth on a separate document, as Fed.R. Civ.P. 58 requires for final judgments, and by the fact that Quartana, as evidenced by her motions to vacate and set aside the order, appears to have understood the judgment to be final.

3. While Quartana was not entitled to an amendment as of right under Rule 15(a) after the February 25 dismissal, see note 1, *supra,* she was entitled to move for leave to amend, and such motions should be granted liberally. *Dorn,* 767 F.2d at 443.

sal order. We conclude that the motion to amend the complaint tolled the running of the time for appeal until the motion was denied in the April 12 opinion and order, and therefore hold that Quartana's notice of appeal was timely filed.

## II. THE DISMISSAL OF QUARTANA'S CLAIMS

### A. The Libel Claim

We begin our review of the merits of the District Court's dismissal of Quartana's complaint by noting that in ruling on motions to dismiss for failure to state a claim, the allegations contained in the complaint must be accepted as true, and the plaintiff is entitled to all factual inferences in her favor. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Applying this standard here, we conclude that Quartana did state a claim for libel.

■ In her original complaint, Quartana cited as the basis for her claim Utterback's statement in his letter to Sealright that Quartana, in negotiating the Mama Tish's arrangement, had told him:

> " 'Sealright has a $5,000.00 credit rating on Mama Tish so I know their credit is OK,' ... 'I'll personally see that they pay their bills.' "

First Amended Complaint, Count I, ¶ 12. Quartana alleged that she had never said these things to Utterback, and that Mama Tish's did not, in fact, have a $5,000.00 credit line with Sealright. She further alleged that Utterback knew when he wrote Sealright that Quartana had never made these statements, and that Utterback attributed these statements to her "with the malicious intent of injuring [her] in her good name and reputation and in the pursuit of her livelihood." *Id.,* ¶ 9. Finally, she alleged that Sealright terminated her

employment as a result of the statement, to her financial and emotional detriment. One may fairly infer that Sealright, whose own business was involved, knew that the statements attributed to Quartana were false.

The District Court held that Quartana had not stated a claim for libel because it found nothing in Utterback's statements that was defamatory of her. See *Coots v. Payton,* 365 Mo. 180, 280 S.W.2d 47, 53 (1955) (en banc) (libel, in Missouri, is "the malicious defamation of a person made public by any printing [or] writing ... tending to expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse"). Quartana contends that if her complaint is read, as it must be here, in the light most favorable to her, it alleges that Utterback's statements made her out to be a liar. See *Brown v. Kitterman,* 443 S.W.2d 146, 154 (Mo.1969) (words can be defamatory if they impute fraud, lack of integrity, or misconduct in one's calling).

We agree with Quartana. Utterback's statements to Sealright do not, it is true, expressly accuse Quartana of lying. However, taking Quartana's allegations as truth, Utterback's statements do attribute to her representations about Mama Tish's credit line which were false and which Sealright knew to be false. We discern little difference between calling a person a liar and making false statements that clearly indicate to the party receiving the communication that the person is a liar. Quartana's First Amended Complaint makes much clearer than her original complaint her contention that Utterback defamed her in this manner, but we believe that even her original complaint's treatment of the matter was sufficient to survive a motion to dismiss.

■ We also conclude that Quartana's First Amended Complaint adds a further allegation that imports another basis for viewing Utterback's statements as defamatory.[4] Quartana alleges in the First

---

4. We move beyond the allegations and claims

for relief contained in Quartana's original com-

Amended Complaint that Sealright had a policy against its salespersons' guaranteeing payment of bills to buying associations such as All Star. First Amended Complaint, Count I, ¶ 14(b). Thus, Utterback's assertion that Quartana had stated, "I'll personally see that they pay their bills," may have defamed Quartana by indicating to Sealright that she had violated a company policy.

In holding that neither Quartana's original complaint nor her First Amended Complaint stated a claim, the District Court also emphasized its conclusion that Sealright discharged Quartana not because of her purported misrepresentations to Utterback, but because the billing arrangement she set up so that Mama Tish's could obtain a lower price was a fraud upon Sealright and a breach of her duty to serve Sealright honestly. However, as we read Quartana's complaints, we find nothing in them that indicates either that Quartana was dishonest towards Sealright in creating the billing arrangement or that the arrangement was in itself the cause of her termination. Particularly when the complaints are viewed with the deference proper to a motion to dismiss, it is clear that the District Court was not justified in reaching this conclusion. It is always possible, of course, that the proof will bear out the District Court's intuition, making dismissal appropriate at a later stage of the case.

Thus, we hold that Quartana did state a claim for libel.

### B. Tortious Interference with Contractual Relations

 We also believe that Quartana's First Amended Complaint stated a claim for tortious interference with contractual relations. The elements of such a claim under Missouri law are:

1) A contract or a valid business relationship or expectancy ...;

2) Defendant's knowledge of the contract or relationship;

3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;

4) The absence of justification; and

5) Damages resulting from defendant's conduct.

*Fischer, Spuhl, Herzwurm & Assoc., Inc. v. Forrest T. Jones & Co.,* 586 S.W.2d 310, 315 (Mo.1979) (en banc) (emphasis omitted), *quoting Salomon v. Crown Life Insurance Co.,* 536 F.2d 1233, 1238 (8th Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976). Quartana alleges that she had a valid business relationship with Sealright, that Utterback knew of the relationship, and that by communicating the false statements that are the subject of her libel claim to Sealright, Utterback intentionally and maliciously caused the termination of her relationship with Sealright. She further alleges that Utterback's actions were without justification or excuse, and that she has lost wages and income due to her termination. First Amended Complaint, Count II, ¶ 8. These allegations are adequate to survive a motion to dismiss.

In conclusion, we hold that Quartana's notice of appeal was timely and that she has stated claims for relief on theories of libel and intentional interference with contractual relations. Accordingly, the decision of the District Court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

---

plaint to those she introduced in the second for two reasons. First, since we are now holding that Quartana's original complaint did state a claim, on remand she will be entitled to amend that complaint as of right under Rule 15(a). Second, even had the original complaint failed to make clear how Utterback's statements were

supposed to be defamatory, the First Amended Complaint is more than adequate on the point; therefore the District Court erred in holding that the First Amended Complaint still failed to state a claim and denying leave to amend on that basis. See note 3 *supra.*