STANDARD ALASKA PRODUCTION COMPANY, Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.

No. S–2445.

Supreme Court of Alaska.

April 21, 1989.

Joseph M. Wilson and Louis R. Veerman, Guess & Rudd, Anchorage, and James P. Murphy, Squire, Sanders, Dempsey, Washington, D.C., for appellant.

Michael G. Hotchkin, Asst. Atty. Gen. and Grace Berg Schaible, Atty. Gen., for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

Standard Alaska Production Company ("Standard") filed a complaint in superior court seeking a declaration that the Alaska Department of Revenue ("Department") lacks authority to increase disputed tax assessments after three years have passed from the date the tax return was filed. The superior court dismissed the declaratory judgment action on the ground that Standard would first have to exhaust available administrative grievance procedures before seeking a judicial remedy.[1] This appeal followed.

## I. FACTS AND PROCEEDINGS.

Standard timely filed its 1978 oil and gas corporate income tax return on June 15, 1979. The Department timely issued a deficiency assessment for 1978 in the amount of $11,454,618 (plus interest) on December 31, 1981.

On March 1, 1982, Standard formally disputed the assessment and requested an informal administrative conference pursuant to AS 43.05.240(a). Standard also reiterated its previously stated view that Alaska's oil and gas corporate income tax, AS 43.21.010–.120,[2] was unconstitutional under the Alaska and United States Constitutions,[3] and that it was submitting to the administrative process under protest. Several informal conferences were subsequently held through February of 1984. However, these conferences did not result in a resolution of the parties' dispute.

On February 4, 1985, the Department issued an amended notice of tax liability which imposed an additional deficiency of $36,377,824 (plus interest) for 1978. Standard timely appealed this amended assessment and requested a formal administrative hearing pursuant to AS 43.05.240(b). The requested hearing had not yet been held when Standard filed the instant declaratory judgment action on January 23, 1987. In March 1987, the parties stipulated to postpone further administrative proceedings "pending resolution of the declaratory judgment action."

Standard's complaint alleges that the 1985 assessment "is invalid because it purports to amend the [1981] Assessment after expiration of either of the periods provided under 15 AAC 21.700(e)[4] and 15 AAC 21.810(1)[5].... [and] because [it is] barred by

1. The original order granted the Department's motion to dismiss only in part. On reconsideration, the superior court dismissed the complaint in its entirety, explaining that its earlier decision that "issue[s] of law" could properly be reviewed prior to a final agency decision on the other issues had been incorrect.

2. Ch. 110, § 3, SLA 1978; amended ch. 113, §§ 28–33, SLA 1980; amended ch. 116, §§ 6–11, 17, SLA 1981; repealed ch. 116, § 19, SLA 1981.

3. Standard and other oil companies were then engaged in litigation challenging the validity of the statute, which this court ultimately upheld. *Atlantic Richfield Co. v. State*, 705 P.2d 418, 420 (Alaska 1985), *appeal dismissed*, 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986).

4. 15 AAC 21.700(e) provides:

On or before August 15 (for fiscal-year taxpayers, the 15th day of the eighth month after the month in which the taxpayer's fiscal year ends), the department will assess the taxpayer and send the taxpayer a notice of assessment showing the amount of net taxable income under this chapter for that taxpayer during the previous year, the total amount of tax due under this chapter, and the amount (if any) of that tax remaining unpaid or overpaid. Returns and assessments under this section are subject to amendment for three years from the date of the original notice of assessment.

5. 15 AAC 21.810 states in part: "Except as otherwise provided in AS 43.05.260 or AS 43.05.270, the department will, in its discretion (1) amend an assessment under this chapter no later than three years from the date a return is due or filed under this chapter, whichever is later."

the three-year limitation period of AS 43.-05.260(a) [6]." It is also contended in the complaint that the allegedly untimely 1985 assessment unconstitutionally violated state and federal due process.[7] Standard challenges only the additional $36 million assessed in 1985, reserving its substantive challenges to the $11 million deficiency assessed in 1981 until the completion of this declaratory judgment action.

The Department moved to dismiss Standard's complaint on the ground that Standard "ha[d] not yet exhausted its administrative remedies." It argued that no official Department view as to Standard's limitations claims had yet been formulated, and that it would address all of Standard's substantive and procedural arguments regarding all of the Department's assessments for the 1978 tax year during the normal administrative appeals process.

After a hearing, the superior court granted the Department's motion, stating: "Regardless of how the issues are phrased, Standard is challenging administrative agency action, policy and procedure." The dismissal was without prejudice, and the final judgment explicitly preserved Standard's right "to seek judicial relief following the conclusion of the administrative appeal process under AS 43.05.240."

We affirm the superior court's dismissal of this declaratory judgment action. The superior court properly ordered Standard to exhaust available administrative remedies before seeking judicial review of the Department's actions.

Standard presents several arguments in this appeal. Standard first contends that it is not required to exhaust administrative remedies prior to seeking a judicial declara-tion on issues of constitutionality and statutory interpretation. Standard alternatively argues that attempts to exhaust administrative grievance procedures would be "futile" and cause "irreparable harm." Finally, Standard argues that the superior court was required by statutory declaratory judgment provisions to entertain this action regardless of whether administrative remedies had been exhausted.

The Department argues that the superior court lacks jurisdiction over Standard's action because "AS 43.05.240 constitutes the exclusive method by which a taxpayer may challenge an assessment." Alternatively, the Department argues that the superior court properly dismissed Standard's action pursuant to the judicially created doctrine of administrative exhaustion.

## II. STANDARD'S RIGHT TO APPEAL.

■ As a preliminary matter, we must decide whether the superior court's order dismissing Standard's complaint for declaratory relief was a final, and therefore appealable, order. *See* Alaska R.App.P. 202(a). A dismissal of a complaint is appealable "where it is clear that the trial court determined that the complaint could not be amended so as to prevent future dismissals" on the same ground. *Clary v. Stack Steel and Supply Co.*, 611 P.2d 80, 82–83 (Alaska 1980) (quoting *Nizinski v. Currington*, 517 P.2d 754, 755 (Alaska 1974)). In the case at bar the superior court clearly indicated that Standard could not avoid dismissal without first exhausting available Department grievance procedures in order to obtain a final Department determination of what taxes were owed.

■ The Eighth Circuit holds that the dismissal of a complaint is deemed final

---

6. Alaska Statute 43.05.260(a) provides:
    Except as provided in (c) of this section and AS 43.20.200(b), the amount of a tax imposed by this title must be assessed within three years after the return was filed, whether or not a return was filed on or after the date prescribed by law. If the tax is not assessed before the expiration of the three-year period, no proceedings may be instituted in court for the collection of the tax.

7. Standard argues that taxpayers will be unconstitutionally deterred from appealing erroneous assessments if the filing of an administrative appeal tolls the limitations period of AS 43.05.-260(a) and "puts [the taxpayer] in jeopardy of receiving increased assessments into the indefinite future." *See also* 1984 Formal Op.Att'y Gen. No. 2, at 35–36 (Oct. 16, 1984) (concluding that the statute of limitations is suspended for the duration of administrative appeal proceedings and that the administrative hearing officer can increase the assessment on appeal), discussed *infra* at 208–09.

unless leave to amend is explicitly granted. *Quartana v. Utterback,* 789 F.2d 1297, 1299–1300 (8th Cir.1986); *accord Weisman v. LeLandais,* 532 F.2d 308, 309 (2d Cir. 1976). The Eighth Circuit adopted this rule because "it avoids confusion over when a plaintiff's right to amend a dismissed complaint terminates, the order becomes final, and the time for appeal begins to run." 789 F.2d at 1300.

We find the approach of the Eighth Circuit persuasive and adopt that court's rule for determining questions regarding finality when a complaint has been dismissed. Therefore, we hold that the superior court's order was final for purposes of appellate review.

### III. DO ANY OF ALASKA'S DECLARATORY JUDGMENT PROVISIONS GIVE THE SUPERIOR COURT JURISDICTION OVER STANDARD'S CLAIMS?

Standard claims that superior court jurisdiction is conferred in this case by 1) Rule 57(a) of the Alaska Rules of Civil Procedure; 2) the Administrative Procedure Act's declaratory judgment provision, AS 44.62.300; and/or 3) the Declaratory Judgment Act, AS 22.10.020(g).

We begin our analysis by noting that the issues raised by Standard in this case are subject to the doctrine of administrative exhaustion. A party cannot avoid statutorily or judicially imposed exhaustion requirements merely by framing a grievance as a "declaratory judgment" action. *Indiana Hosp. Ass'n v. Schweiker,* 544 F.Supp. 1167, 1173 (S.D.Ind.1982), *aff'd sub nom. St. Francis Hosp. Center v. Heckler,* 714 F.2d 872 (7th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984) ("The declaratory judgment provision may not be used to evade a failure of jurisdiction or to avoid exhausting administrative remedies."); *Mutual of Enumclaw Ins. Co. v. Washington State Human Rights Comm'n,* 39 Wash.App. 213, 692 P.2d 882, 884 (1984) ("[A] party

seeking declaratory relief must show that its administrative remedies have been exhausted."); *State ex rel. J.S. Alberici, Inc. v. City of Fenton,* 576 S.W.2d 574, 577 (Mo.App.1979); *see also McGrath v. Kristensen,* 340 U.S. 162, 169, 71 S.Ct. 224, 229, 95 L.Ed. 173, 181 (1950) ("declaratory judgment ... [action may be brought] after the exhaustion of administrative remedies"). The superior court's decision on whether to hear a case must be based "not ... [upon] the label but from the substantive gravamen of the complaint." *Walsh v. City of Brewer,* 315 A.2d 200, 210 (Me.1974).

#### A. *Rule 57(a).*

█ Standard argues that Rule 57(a) of the Alaska Rules of Civil Procedure [8] provides that declaratory relief may be awarded even where another adequate remedy exists. This rule "establishe[s] ... the general rules of pleading and civil procedure [that] apply to actions for declaratory relief." *Alaska Airlines, Inc. v. Red Dodge Aviation, Inc.,* 475 P.2d 229, 232 (Alaska 1970). The rule does not independently give a court jurisdiction to hear declaratory judgment actions, but only governs such actions when they are otherwise properly brought before that court. Rule 57(a) therefore has no bearing on the outcome of this case.

#### B. *AS 44.62.010–.650.*

█ Standard further argues that this case was properly brought pursuant to the declaratory judgment provisions of Alaska's Administrative Procedure Act, AS 44.62.010–.650. This Act in relevant part provides that "[a]n interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court." AS 44.62.300. Standard contends that the Department's "decision" that AS 43.05.260(a) does not bar the 1985 assessment as untimely constitutes a "regulation." However, an agency's position on an issue will only be considered a "regulation" if it has been "adopted by [that] agency." AS 44.-

---

**8.** Rule 57(a) reads in relevant part:
The procedure for obtaining a declaratory judgment pursuant to statute shall be in accordance with these rules.... The existence

of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.

62.640(a)(3). The Department has not issued its definitive position on the interpretation of AS 43.05.260(a). The interpretation of this statute in its non-final 1985 assessment cannot be considered an "adoption" of a regulation.[9] Accordingly, we hold that AS 44.62.300 is not applicable in the instant case.

### C. AS 22.10.020(g).

■ Standard argues that jurisdiction is conferred by Alaska's Declaratory judgment Act, AS 22.10.020(g), which provides in part:

> In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, *may* declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought.

(Emphasis added.) The Declaratory Judgment Act "does not provide the plaintiff with a separate jurisdictional basis." *Indiana Hosp. Ass'n*, 544 F.Supp. at 1173 (interpreting the federal act, the model for Alaska's act).[10] The superior court will only hear an action brought under the Act where the case is otherwise properly before the court. For reasons which will be explained below, we have concluded that in light of the allegations pled by Standard the superior court did not abuse its discretion in declining to declare the parties' rights until Standard had exhausted available administrative remedies.

### IV. DECLARATORY JUDGMENT ACTIONS AND THE EXHAUSTION OF ADMINISTRATIVE REMEDIES REQUIREMENT AS IT RELATES TO PURELY CONSTITUTIONAL OR LEGAL ISSUES.

### A. *Does the Doctrine of Administrative Exhaustion Bar Standard's Declaratory Judgment Action?*

■ The superior court may dismiss an action over which it has jurisdiction where the plaintiff has improperly bypassed available administrative remedies. *See Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir.1985) (courts can require that administrative remedies be exhausted before exercising jurisdiction over case). A dismissal may be predicated on a party's failure to comply with exhaustion requirements that have been "judicially created," though not mandated by statute. *See id.* We recently explained in *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119 (Alaska 1988), that:

> "The doctrine of exhaustion of administrative remedies is an expression of administrative autonomy and a rule of sound judicial administration." Whether a court will require exhaustion of remedies turns on an assessment of the benefits obtained through affording an agency an opportunity to review the particular action in dispute. In particular we have observed that "the basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."
>
> . . . .
>
> We have not articulated a principle governing when a regulatory scheme's constitutionality may be challenged without exhausting administrative remedies. According to Professor Davis, exhaustion, generally, is not required when the constitutionality of the statute is the only issue raised in a case. *See* 4 K. Davis, *Administrative Law Treatise*, § 26:6 (2d ed. 1983). Davis concludes that exhaustion may be required when non-constitutional issues are present or when a factual context is needed for deciding the constitutional issue.

*Id.* at 121–22 (citations and brackets omitted).

---

**9.** We express no opinion as to whether the Department's interpretation of AS 43.05.260(a) upon completion of a final administrative hearing would constitute a "regulation" under AS 44.62.640(a)(3).

**10.** In *Alaska Airlines, Inc. v. Red Dodge Aviation, Inc.,* we stated: "The Alaska statute was modeled after the federal Declaratory Judgment Act, so federal precedent is pertinent." 475 P.2d 229, 232 (Alaska 1970) (footnote omitted).

Standard contends that since the questions raised involve the interpretation of statutory and regulatory provisions, as well as potential constitutional violations, the requirement that administrative remedies be exhausted prior to judicial review is inappropriate. More particularly, Standard asserts it is raising legal questions as to the issue of whether the Department's 1985 amendment of its 1981 assessment is untimely under AS 43.05.260(a), 15 AAC 21.-700(e), and 15 AAC 21.810(1), or violative of due process under the federal and Alaska constitutions. It argues that the Department possesses no special expertise in interpreting regulatory, statutory and constitutional provisions, and that such questions are particularly appropriate for judicial resolution.

We have previously addressed Standard's argument. In *Eidelson v. Archer,* 645 P.2d 171 (Alaska 1982), we held that the doctrine of administrative exhaustion applied to the internal peer review and disciplinary procedures of a privately owned hospital in the same way that it applied to grievances arising from state administrative actions. *Id.* at 179. The plaintiff physician, whose staff privileges had been summarily suspended, argued that exhaustion was not required because he was challenging his suspension as violative of the hospital's bylaws. *Id.* at 180–81. We concluded that the grievance procedures provided by the hospital would have to be exhausted before the superior court could properly exercise its jurisdiction. *Id.* Cautioning that the requirement of exhaustion should not be discarded every time someone severs "legal issues" from the factual portion of his controversy, we wrote:

> If we take [plaintiff's] argument to its logical conclusion, the exhaustion of remedies doctrine could be disregarded whenever the hospital's actions are found to be improper....
>
> One of the primary purposes of the exhaustion of remedies doctrine is to promote judicial economy by affording an institution the opportunity to correct its own errors, so as to render judicial action unnecessary. *Van Hyning v. Universi-*

*ty of Alaska,* 621 P.2d 1354, 1356 (Alaska 1981) [, *cert. denied,* 454 U.S. 958 [102 S.Ct. 495], 70 L.Ed.2d 373 (1981)]. If a party could obviate the exhaustion requirement simply by claiming that the hospital's action was improper, the doctrine would effectively be emasculated. *Id.* at 181.

In *Ben Lomond,* we similarly cautioned against allowing parties to tailor their claims to avoid the requirement of administrative exhaustion. There the plaintiff framed his claim for relief in terms of "constitutional" issues, and argued as does Standard that these issues were inappropriate for agency resolution. We held that the plaintiff's complaint should be dismissed for failure to exhaust administrative remedies, and stated:

> We believe that requiring exhaustion is particularly appropriate where a complainant raises both constitutional and non-constitutional issues. This is because successful pursuit of a claim through the administrative process could obviate the need for judicial review of the constitutional issues. We further believe that it is axiomatic to our system of justice that we have a factual context within which to review a case. Applying these principles to the instant case we conclude that the benefits that could have been obtained from allowing the agency to review this case justify application of the exhaustion doctrine.

761 P.2d at 122. *See also Owsichek v. State, Guide Licensing and Control Board,* 627 P.2d 616, 620 (Alaska 1981).

■ *Ben Lomond* and *Eidelson* both instruct the superior court not to entertain "legal" or "constitutional" claims which have been severed from the remainder of a controversy otherwise subject to the doctrine of administrative exhaustion. As we have indicated in the past, where a controversy involves *only* constitutional, and no factual issues, the exhaustion doctrine may be held not to apply. *Ben Lomond,* 761 P.2d at 122 (citing 4 K. Davis, *Administrative Law Treatise* § 26:6 (2d ed. 1983)). But cases of mixed questions of law and fact are "particularly" appropriate for ad-

ministrative resolution prior to judicial review since 1) a ruling on the legal issues will not necessarily be dispositive of the whole controversy, and 2) an administrative ruling on the factual issues may moot the legal issues.

The potential benefits of this rule become apparent in this case. The Department presents various scenarios which, if they transpire, will obviate the need for the superior court, and possibly this court, to consider the "legal" issues raised in Standard's declaratory judgment action.

The process of administrative review might result in the abatements Standard seeks, or in an abatement which would reduce the assessed tax liability to the amount requested by the Department in the admittedly timely 1981 audit. If the assessment is reduced to the 1981 level, then the current controversy will be mooted, as Standard admits that the taxes imposed by the 1981 assessment are not barred by any limitations period. The Department also hypothesizes that evidence of fraudulently withheld information may surface during administrative proceedings. Taxpayers who fraudulently withhold information cannot benefit from the limitations period in AS 43.05.260.[11] This, too, would moot the issues presented by Standard in its present action. Additionally, even if judicial review were permitted at this point, it is unlikely that Standard's grievances with the Department would be fully satisfied. The current action merely challenges a portion of the allegedly untimely 1985 assessment as procedurally invalid. Even if a portion is declared invalid as untimely, Standard's substantive grievances over timely portions of the assessment will remain to be considered by the Department.

The facts of this case demonstrate the benefits to be obtained by requiring Standard to exhaust its administrative remedies prior to seeking judicial review. Unless Standard is able to show that exceptions to the doctrine of administrative exhaustion apply in this case, we hold that it was not an abuse of discretion on the superior court's part to require that it first submit all of its grievances relating to the 1985 assessment to the Department for a final, single agency decision. If grievances remain after Standard obtains a final agency decision, then a single appeal to the superior court can be filed to challenge any agency determinations. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194, 203 (1969) ("of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages"). A ruling allowing parties to interrupt administrative proceedings by merely presenting legal or constitutional claims would too severely hamper an agency's ability to perform the work assigned to it by the legislature. An agency must be left with some degree of "autonomy" so that its delegated functions can be performed.

Thus we hold that the superior court did not err in declining to hear Standard's claims for declaratory relief.

**B. *Do Exceptions to the Doctrine of Administrative Exhaustion Apply in this Case?***

To guard against injustice, this court has recognized certain exceptions to the doctrine of administrative exhaustion. *See Eidelson*, 645 P.2d at 179 (citing authorities). Arguing in the alternative, Standard contends that two of these exceptions apply. Standard's first argument is that since the agency has issued a *de facto* final decision that the 1985 assessment was timely, further administrative proceedings will be "futile." Standard also argues that "irreparable harm" will result if it is forced to await a final agency decision prior to obtaining judicial review.

■ Standard claims that the "futility" exception to the exhaustion doctrine should be applied. Standard asserts that because the Department has already made a final decision that the 1985 assessment was not

---

11. "[E]xceptions ... to the limitations period ... [include] case[s] of ... false or fraudulent return[s] with the intent to evade tax...." AS 43.05.260(c)(1).

barred as untimely under AS 43.05.260, any formal hearing on the issue will be a waste of time, i.e., "futile." Where exhaustion of administrative remedies will be futile because of the certainty of an adverse decision, a party need not obtain a final agency ruling before seeking judicial review. *See Eidelson*, 645 P.2d at 181–83 (since tribunal not biased against plaintiff, "futility" exception not applicable).

The basis for Standard's assertion is that the Department requested an opinion from the Attorney General regarding a proper interpretation of AS 43.05.260. According to that opinion, 1984 Formal Op.Att'y Gen. No. 2 (Oct. 16, 1984), an assessment may be increased on appeal notwithstanding the limitations provision of AS 43.05.260(a). Standard argues that the Department's position on the statute's interpretation is "entrenched." In support of this contention, Standard cites a letter written by then-Department Commissioner Nordale to Standard regarding the amount of deference the Department would pay to the Attorney General's opinion. The letter reads in part: "From a practical standpoint, the Attorney General is the legal counsel of the State of Alaska. It would take a rare and unusual situation to disregard a requested opinion directly responding to a question we raised." The letter also states:

> [I]t would be premature, and inappropriate, for me to review and decide the legal issues underscored in the opinion and addressed in your letter.

The Department has well established procedures firmly in place for the resolution of such matters.

....

... It certainly would be inappropriate to even consider such action without the benefit of the formal review process.

It appears highly possible that the Department will find the 1985 assessment valid under AS 43.05.260. But absent any proof in the record that then-Commissioner Nordale was not being candid, it also appears that the Department is willing to seriously consider all of Standard's legal and factual contentions at a formal hearing. On the record before us, a decision adverse to Standard's interests does not appear to be a "certainty." *See Municipality of Anchorage v. Higgins*, 754 P.2d 745, 747–48 (Alaska 1988) (absent a showing that exhaustion "would so certainly result in an adverse decision as to render the remedy 'futile,' " an exception to the rule would be unwarranted).[12] We therefore hold that the "futility" exception to the doctrine of administrative exhaustion does not apply here.

Standard also argues that the delay caused by administrative review of the issues presented will cause it "irreparable harm." Such harm will result, according to Standard, "[b]ecause uncertainty about taxes can create difficulties for taxpayers in their relations with creditors, shareholders and governmental agencies ... [causing them to] waive the constitu-

---

**12.** Standard asserts that this case resembles *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496 (9th Cir.1980). In *Aleknagik*, native Alaskan villages challenged the Secretary of the Interior's interpretation of a statute that would allow non-natives to occupy lands within their villages. The plaintiffs argued, and the court agreed, that the Secretary's position was "established" and that administrative appeals would be "futile." *Id.* at 500. The Secretary had "made clear" his position on the issue. *Id.* As an example of his position, the court quoted a memorandum, approved by the Secretary, espousing the legal position the natives contested. *Id.* Furthermore, the administrative boards which provided hearings were "foreclosed" from "overruling the Secretary's position," either by regulation or by self-imposed policy. *Id.* That case is clearly distinguishable from the case at bar.

Courts in other jurisdictions have only applied the futility exception where agencies have been much more firmly entrenched in their positions than the Department. *See* 4 K. Davis, *Administrative Law Treatise* § 26:11 (2d ed. 1983) (citing *Cafferello v. United States Civil Service Comm'n*, 625 F.2d 285, 287 (9th Cir.1980) (agency review board's earlier decision on plaintiff's case made it "apparent" that any subsequent decision would be adverse); *Continental Can Co. v. Marshall*, 603 F.2d 590, 595–96 (7th Cir.1979) (agency proceeding futile since earlier ruling on same issue, regarding similar manufacturing plants also owned by plaintiff, was adverse); *Porter County Chapter of the Izaak Walton League v. Costle*, 571 F.2d 359, 363–64 (7th Cir.) (exhaustion not required where administrative appeal would be to administrator who had already stated a definitive position), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978)).

tional and statutory right to a hearing and be forced to pay initial assessments without protest to avoid the potential of ever-increasing assessments, even though the initial assessments may be unjust and unwarranted."

Standard has not been "forced to pay an initial assessment without protest." In fact, Standard has been formally protesting its 1978 tax liabilities since 1981. We will therefore only consider Standard's argument that delay in the administrative process makes the company's financial status unclear.

Courts have declined to require administrative exhaustion "[w]here irreparable injury will result unless judicial review is permitted." *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 499 (9th Cir.1980) (footnotes omitted).[13] If Standard's irreparable harm claim were accepted, then exhaustion could always be bypassed in tax cases, since a challenged tax assessment will by definition make one's financial status uncertain. The "irreparable harm" alleged by Standard is not serious enough to justify an exception to the requirements of the exhaustion doctrine. *See Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 23–24, 94 S.Ct. 1028, 1040–1041, 39 L.Ed.2d 123, 139 (1974) (neither the risk of being unsuccessful in the administrative appeals process, nor the costs of litigation, constitutes "irreparable" injury). We therefore decline to hold that the "irreparable harm" exception applies in this case.

Therefore, since no exceptions to the doctrine of administrative exhaustion apply in this case, we hold that the superior court did not err in declining to hear Standard's claims for declaratory relief.

**V. AS 43.05.240 PROVIDES AN ADDITIONAL BASIS FOR SUSTAINING THE SUPERIOR COURT'S DISMISSAL.**

Courts are without jurisdiction over a case where statutory exhaustion requirements have not been complied with. *Marathon Oil Co. v. United States,* 807 F.2d 759, 768 (9th Cir.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). The Department argues that AS 43.05.240 is a statutory exhaustion requirement, thereby making administrative proceedings an aggrieved taxpayer's exclusive remedy, and depriving the superior court of jurisdiction until the completion of that process.[14] That statute provides that a taxpayer aggrieved by the Department "in fixing the amount of a tax or in imposing a penalty" may apply for an informal conference or formal hearing. AS 43.05.240(a), (b). A taxpayer selecting an informal conference may request a formal hearing if unhappy with the conference decision. AS 43.05.240(b)(2). A taxpayer still dissatisfied with the assessment after exhausting these grievance procedures may appeal the Department's decision to the superior court. AS 43.05.240(d).

In *Fedpac International, Inc. v. State, Department of Revenue,* 646 P.2d 240 (Alaska 1982), the aggrieved taxpayer sought simultaneously to prosecute in superior court both an original action and an appeal of an unfavorable administrative hearing decision to recover an assessment which the taxpayer had paid under protest. *Id.* at 240. This court affirmed the superior court's dismissal of the original action and in so doing said:

> We conclude that in enacting AS 43.05.-240, the legislature intended to prescribe the proper and exclusive means of chal-

**13.** *See also State v. Dupere,* 709 P.2d 493, 497 (Alaska 1985), *modified on reh'g,* 721 P.2d 638 (1986); *State, Dep't of Labor v. University of Alaska,* 664 P.2d 575, 582–83 (Alaska 1983) (Rabinowitz, J., dissenting) (citing 3 K. Davis, *Administrative Law Treatise* § 20.03, at 69–70 (1st ed. 1958)).

**14.** The Department also argues that the controversy is not yet "ripe." But the Department has already taken action against Standard by

levying a tax which Standard must either pay or appeal. The ripeness doctrine forbids judicial review of "abstract disagreements over administrative policies." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681, 691 (1967). This controversy is hardly abstract, since a payable tax has already been levied. The relevant issue, therefore, is whether administrative remedies must first be exhausted prior to judicial review.

lenging a tax assessment, i.e., by appeal [of an administrative hearing decision] to the superior court.

*Id.* at 241.

Standard admits that judicial review of a "tax assessment" must be postponed until after Department grievance procedures have been exhausted. However, as previously discussed, it argues that it is not challenging a "tax assessment." Rather, Standard argues that it is raising legal questions as to whether the Department's 1985 amendment of its 1981 assessment is untimely under AS 43.05.260(a), 15 AAC 21.700(e), and 15 AAC 21.810(1), or violative of federal and state constitutional due process. In short, Standard has styled this declaratory judgment action as a challenge to the legal basis of the Department's tax assessments, and not the assessments themselves.

On the other hand the Department argues that a review of Standard's complaint demonstrates Standard is challenging the Department's decision to issue a particular assessment as violative of Alaska statutes, regulations, and the Alaska and federal constitutions. The state concludes that "Standard is, therefore, challenging an adjudicatory decision or action by the Division relating to a specific tax assessment."

We think there is considerable merit in the Department's argument that despite Standard's characterization of this action, in essence Standard is "challenging a tax assessment." Acceptance of the Department's argument leads to the conclusion that *Fedpac* is controlling. Thus, if Standard's pleadings are construed as challenging the 1985 tax assessment, then Standard is required to exhaust its administrative remedies under AS 43.05.240 before bringing suit in superior court.

## VI. CONCLUSION.

Standard's claims for declaratory relief can be characterized as raising both constitutional and non-constitutional issues, as well as mixed questions of law and fact. Thus, *Ben Lomond, Inc. v. Municipality of Anchorage,* 761 P.2d 119 (Alaska 1988), controls and mandates the conclusion that

the superior court did not err in dismissing Standard's complaint under Alaska's Declaratory Judgment Act. Further, if the essence of Standard's complaint for declaratory relief is viewed as a challenge to the 1985 assessment, then AS 43.05.240, as construed in *Fedpac International, Inc. v. State, Department of Revenue,* 646 P.2d 240 (Alaska 1982), also requires that Standard first exhaust its administrative remedies before instituting a claim for declaratory relief in the superior court.

AFFIRMED.