**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHARON G. TROTTER,

        Plaintiff - Appellant,

  v.

THE REGENTS OF THE
UNIVERSITY OF NEW MEXICO;
UNIVERSITY OF NEW MEXICO
SCHOOL OF MEDICINE; WILLIAM
L. ANDERSON, Ph.D., individually
and in his capacity as Chair of the
Committee on Student Promotions and
Evaluations, University of New
Mexico School of Medicine; LINDA J.
McGUFFEE, Ph.D., individually and
in her capacity as Chair, Education
Council, UNM School of Medicine;
SAMUEL SCOTT OBENSHAIN, MD,
individually and in his capacity as
Associate Dean for Undergraduate
Medicail Education, UNM School of
Medicine; RICHARD E. PECK,
individually and in his capacity as
President of the University of New
Mexico; PAUL ROTH, MD,
individually and in his capacity as
Dean, UNM School of Medicine,

        Defendants - Appellees.

No. 99-2109

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-98-428-LJ/WWD)

Dennis W. Montoya, Montoya Law Offices, Rio Rancho, New Mexico, for Plaintiff-Appellant.

Randolph B. Felker, Felker, Ish, Ritchie & Geer, P.A., Santa Fe, New Mexico, for Defendants-Appellees.

Before **TACHA, McWILLIAMS, and MAGILL,**[*] Circuit Judges.

**MAGILL,** Circuit Judge.

This appeal requires us to decide whether public university officials who dismiss a medical student for inadequate academic performance are entitled to qualified immunity from suit for alleged violations of the student's due process rights under the Fourteenth Amendment. For reasons to be discussed, we answer yes and affirm the judgment of the district court[1] dismissing plaintiff's claims.

## I. BACKGROUND

### A. Sharon Trotter's Academic Career

Sharon Trotter was academically unsuccessful at the University of New Mexico Medical School (Medical School) during her four years as a student. In a

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1]The Honorable Leroy Hansen, United States District Judge for the District of New Mexico.

letter dated February 12, 1996, the Medical School dismissed Trotter for poor academic performance. After Trotter filed a lawsuit challenging her dismissal, the Medical School reinstated her subject to meeting certain academic conditions. However, Trotter's poor academic performance compelled the Medical School to dismiss Trotter a second time. Trotter appealed this second dismissal to the Education Council (Council), a legislative committee administered by the Medical School's Office of Education. At an academic hearing held on June 4, 1996, the Council upheld Trotter's dismissal. Trotter appealed the Council's decision to Paul Roth, Dean of the Medical School. Dean Roth overturned her dismissal, contingent upon Trotter meeting minimum academic requirements.

On approximately January 6, 1997, Dean Roth again expelled Trotter for failing to meet the academic conditions of her reinstatement. Trotter acknowledges that Dean Roth warned her that she was not meeting the conditions of her probationary reinstatement approximately two weeks before he expelled her for the third and final time from the Medical School for poor academic performance. Richard Peck, President of the University of New Mexico (University), reviewed and upheld Trotter's third dismissal. Trotter unsuccessfully requested the University's Board of Regents to review President Peck's decision.

Trotter also filed a complaint challenging her dismissal with the United States Department of Education, Office for Civil Rights (OCR). After performing an investigation, the OCR concluded that "the University's actions were based on [Trotter's] continued poor academic performance . . . . It is clear that the University offered her all available due process appeal rights and she was afforded numerous opportunities to correct [her] academic deficiencies. There is no evidence of any substantive departure from the Due Process procedures."

**B. Procedural History**

On April 10, 1998, Trotter filed a complaint in federal district court alleging denial of due process. On August 3, 1998, Trotter filed her First Amended Complaint. Defendants moved to have her complaint dismissed on September 18, 1998, on the grounds of qualified and absolute immunity. At a hearing held on January 27, 1999, the district court granted the defendants' motion. At the conclusion of the hearing, the district court granted Trotter leave to file a substitute motion to amend her complaint within ten days. Trotter filed such a motion on February 2, 1999. On March 31, 1999, the district court denied Trotter's motion to amend and dismissed her action with prejudice. Trotter filed her notice of appeal on April 13, 1999. This appeal followed.

## II.  ANALYSIS

### A. Timeliness of the appeal

Federal Rule of Appellate Procedure 4(a) provides that the notice of appeal in civil cases must be filed within thirty days of the entry of the judgment or order appealed from.  See Fed. R.  App. P. 4(a)(1).  Appellees maintain we lack jurisdiction to review the dismissal of Trotter's claims because she failed to file her notice of appeal within thirty days of the district court's January 27 order.  Because the filing of a timely notice of appeal is "mandatory and jurisdictional," Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203 (1988), we must determine, as a threshold matter, whether the notice of appeal was timely.  See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379 (1981) (holding that once an appellate court determines a notice of appeal is untimely, the court "lacks discretion" to review the merits).

Under the Federal Rules of Appellate Procedure, "[a] judgment or order is entered within the meaning of Rule 4(a) when it is entered in compliance with Rule 58 . . . ."  Fed. R. App. P. 4(a)(7).  Rule 58 of the Federal Rules of Civil Procedure provides that "[e]very judgment shall be set forth on a separate document."  Fed. R. Civ. P. 58.  The purpose of this rule is to eliminate confusion about when the clock for an appeal begins to run.  See Bankers Trust Co. v.

Mallis, 435 U.S. 381, 384 (1978) (per curiam). In the past, we have stressed the importance for district courts to abide by Rule 58 and to apply it mechanically by routinely entering a separate final judgment when the court resolves all outstanding issues. See United States v. City of Kansas City, 761 F.2d 605, 606-07 (10th Cir. 1985). However, because Rule 58 was designed solely to eliminate uncertainty, "[t]he separate document rule does not apply . . . where there is no question about the finality of the court's decision." Clough v. Rush, 959 F.2d 182, 185 (10th Cir. 1992) (quotation and citation omitted). Thus, "orders containing neither a discussion of the court's reasoning nor any dispositive legal analysis can act as final judgments if they are intended as the court's final directive and are properly entered on the docket." Id.

The district court's January 27 order dismissing plaintiff's claims does not meet Rule 58's requirements. The order granted Trotter express leave to file a motion to amend her complaint within ten days from entry of the order. This order clearly shows that the district court did not consider its January 27 order to be a final order disposing of the entire action. The district court's order suggests that it believed Trotter could possibly resurrect her claims against the defendants by amending her complaint to allege new facts or causes of action. Thus, the

-6-

January 27 order should not be considered a final judgment for purposes of Rule 58.[2]

Regardless of whether the district court's January 27 order should be treated as an entry of final judgment, Trotter's filing of a Rule 15 motion under the Federal Rules of Civil Procedure within the ten-day period for filing Rule 59(e) motions tolled the time for filing a notice of appeal.  See Quartana v. Utterback, 789 F.2d 1297, 1300 (8th Cir. 1986).  Under Rule 4(a), if a timely Rule 59 motion is made within ten days from the entry of judgment, the time for appeal is measured from the entry of the order ruling on the Rule 59 motion.  See Fed. R. App. P. 4(a)(5).  Regardless of how it is styled, courts consider a motion filed within ten days of the entry of judgment that questions the correctness of the judgment to be a Rule 59(e) motion.  See Vreeken v. Davis, 718 F.2d 343, 345 (10th Cir. 1983).  Thus, we have treated motions for leave to file an amended complaint as motions made pursuant to Rule 59 for purposes of Rule 4.  See id.; see also Quartana, 789 F.2d at 1300 (treating appellant's motion to amend her complaint as a Rule 59 motion for purposes of tolling the time period for filing a notice of appeal).  Thus, assuming that the district court's January 27 order was a final judgment, Trotter's filing of a motion for leave to amend her complaint

---

[2]Our conclusion is consistent with the Supreme Court's instruction that Rule 58 "should be interpreted to prevent loss of the right to appeal."  Bankers Trust, 435 U.S. at 386.

-7-

within ten days of the January 27 order effectively tolled the running of Rule 4(a)'s clock for filing a notice of appeal. The period for filing a notice of appeal began when the district court entered its March 31 order denying Trotter's motion for leave to amend. Trotter filed her notice of appeal on April 13th, well within the thirty day limit set forth in Rule 4(a). Thus, we find Trotter's appeal timely and proceed to review appellees' next jurisdictional challenge.

## B. Failure to Designate Orders Appealed From

Federal Rules of Appellate Procedure 3(c)(1)(B) provides that a notice of appeal must "designate the judgment, order or part thereof being appealed from." Fed. R. App. P. 3(c)(1)(B). Trotter filed her notice of appeal on April 13, 1999, stating that she was appealing "from the dismissal entered herein by the Court." Her notice did not specifically reference the district court's January 27 or March 31 orders. Appellees maintain that Trotter's notice of appeal was ineffective under Rule 3(c)(1)(B). We reject appellees' argument.

In Denver & Rio Grande Western R.R. v. Union Pacific R.R., 119 F.3d 847 (10th Cir. 1997), we held that "[w]hen a notice of appeal fails to designate the order from which the appeal is taken, our jurisdiction will not be defeated if other papers filed within the time period for filing the notice of appeal provide the 'functional equivalent' of what Rule 3 requires." Id. at 849 (citation omitted).

More specifically, we held that a docketing statement filed within the time limits for filing a notice of appeal which "clearly describe[s]" the issues on appeal serves as the "functional equivalent" of a properly drafted Rule 3 notice of appeal. See id. In this case, Trotter's docketing statement clearly set forth the issues on appeal, and, thus, appellees had notice of the subject of the appeal, had copies of the pertinent orders, and suffered no prejudice from Trotter's alleged failure to specifically reference the orders from which she appealed.

## C. Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions . . . ' from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wyatt v. Cole, 504 U.S. 1827, 1832 (1992) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990). Thus, in order to defeat defendants' motion for qualified immunity, Trotter must demonstrate that the defendants violated clearly established federal law when they dismissed her because of poor academic performance.

A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  Conn v. Gabbert, 526 U.S. 286, 290 (1999). Trotter must demonstrate that her dismissal from the Medical School deprived her of either a "liberty" or a "property" interest created by New Mexico state law. See  Board of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 82 (1978). Trotter in her written briefs and at oral argument failed to identify any clearly established law supporting her claim that she held a "property" or "liberty" interest in continued enrollment at the Medical School despite her academic failures.  Even assuming that Trotter held such an interest, she failed to identify any clearly established law requiring more process than she received before the Medical School dismissed her.  Indeed, the relevant caselaw suggests that the Medical School and its officials afforded Trotter far more process than constitutionally required by the Fourteenth Amendment.  See Horowitz, 435 U.S. at 90; Schuler v. University of Minn., 788 F.2d 510, 514 (8th Cir. 1986) (holding that the "University went beyond what was constitutionally required in granting [the student] the opportunity to appear personally before the departmental grievance committee, however informal the hearing.").

In Horowitz, the Supreme Court explored the federal procedural due process rights required when a medical student is dismissed for academic reasons. The Court recognized that there is a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." Horowitz, 435 U.S. at 86. Accordingly, the Supreme Court held that the due process clause does not require that a student dismissed from a state medical school for academic reasons be given a hearing. Id. at 86-90. Rather, according to our Sister Circuit, the due process clause requires no more than that "the student [have] prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and [that] the decision to dismiss the student [be] careful and deliberate." Schuler, 788 F.2d at 514. The record clearly shows that Trotter was afforded prior notice of the faculty's dissatisfaction with her poor academic performance. The number of appeals and review hearings afforded Trotter convince us that the Medical School's decision was careful and deliberate. In short, Trotter has failed to show that any of the defendants violated her due process rights by dismissing her from the Medical School for poor academic performance. Thus, we have little problem affirming the district court's order granting the defendants' motion for summary judgment based on qualified immunity.

Trotter also argues that the defendants violated clearly established law by failing to comply with its own procedural regulations in the adjudication of her grievance. We reject Trotter's argument. The record does not contain a copy of the Medical School's due process statement. Thus, we cannot determine whether the Medical School's own regulations afforded Trotter more procedural protections than she received. However, even assuming that the Medical School failed to follow its own regulations, we find that this failure would not, by itself, give rise to a constitutional claim under the Fourteenth Amendment. See Horowitz, 435 U.S. at 92 n.8 (suggesting that a university's failure to follow its own academic rules does not, in itself, give rise to a due process violation); Schuler, 788 F.2d at 515 (holding that a University's noncompliance with its own grievance appeal procedures did not violate a student's right to procedural due process); cf. Hill v. Trustees of Indiana Univ., 537 F.2d 248, 252 (7th Cir. 1976) (holding that a professor's failure to comply with University's Student Code of Conduct in failing a student as a penalty for plagiarism did not, in itself, constitute a violation of the Fourteenth Amendment). In sum, Trotter has failed to demonstrate that the defendants' actions violated any clearly established law. Rather, the clearly established law shows that the numerous procedures the Medical School afforded Trotter more than discharged its constitutional duty to protect whatever interest she may have had in continued enrollment in the

Medical School. Thus, we affirm the district court's order dismissing her claims against defendants on the grounds of qualified immunity.

## D. Denial of Trotter's Motion For Leave to Amend Her Complaint

Trotter next challenges the district court's March 31 denial of her motion for leave to file a substitute second amended complaint. We reject this argument. The decision to grant leave to amend a complaint after the permissive period has ended is well within the discretion of the trial court, particularly "when the party seeking amendment [knew] or should have known of the facts upon which the proposed amended [complaint] is based but failed to include them in the original complaint." Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994). Trotter has failed to convince us that the district court abused its discretion in denying her motion for leave to file a substitute second amended complaint. Thus, we affirm the district court's March 31 order denying Trotter's motion for leave to amend.

## III. CONCLUSION

For the reasons discussed above, we affirm the district court's orders dismissing plaintiff's claims in their entirety.

-13-