*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CITY OF VALDEZ, ) | |
| ) | Supreme Court Nos. S-18178/18347 |
| Appellant, ) | (Consolidated) |
| ) | |
| v. ) | Superior Court Nos. 3AN-20-05915 CI |
| ) | and 3AN-21-04104 CI (Consolidated) |
| REGULATORY COMMISSION OF ) | |
| ALASKA; HILCORP ALASKA, LLC; ) | O P I N I O N |
| HARVEST ALASKA, LLC; HARVEST ) | |
| MIDSTREAM I, L.P.; HILCORP ) | No. 7697 – May 3, 2024 |
| ENERGY I, L.P.; HILCORP ENERGY ) | |
| COMPANY; BP PIPELINES (ALASKA) ) | |
| INC.; and BP CORPORATION NORTH ) | |
| AMERICA INC., ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Robin O. Brena, Anthony S. Guerriero, and Laura S. Gould, Brena, Bell & Walker, P.C., Anchorage, for Appellant. David A. Wilkinson and Robert Kutchin, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee Regulatory Commission of Alaska. Anne Marie Tavella and Kristal Leonard, Davis Wright Tremaine LLP, Anchorage, for Appellees Hilcorp Alaska, LLC; Harvest Alaska, LLC; Harvest Midstream I, L.P.; Hilcorp Energy I, L.P.; and Hilcorp Energy Company. Michael S. McLaughlin, Patrick J. Coughlin, and Adam D. Harki, Guess & Rudd P.C.,

Anchorage, for Appellees BP Pipelines (Alaska) Inc. and BP Corporation North America Inc.

Before: Maassen, Chief Justice, and Carney, Henderson, and Pate, Justices, and Bolger, Senior Justice.* [Borghesan, Justice, not participating.]

PATE, Justice.

## I.     INTRODUCTION

In this case, we review the superior court's dismissal of administrative appeals from the Regulatory Commission of Alaska (RCA). The City of Valdez (Valdez) asserted a right to scrutinize information the RCA relied upon when deciding whether an oil company seeking to operate Alaska's largest pipeline had the financial capacity to do so consistent with the best interests of the public. Valdez appealed to the superior court for review of two orders by the RCA: Order 6, which approved confidential treatment of certain financial statements that the oil company and its affiliates submitted to the RCA, and Order 17, which approved the transfer of a required certificate and the authority to operate the pipeline.

The superior court dismissed Valdez's appeals because it concluded Valdez lacked standing, Valdez failed to exhaust the available administrative remedies, and the case was moot. The court also ordered Valdez to pay a portion of the attorney's fees of the oil company and other companies involved in the proceedings. Valdez appealed both decisions. We consolidated the appeals. We reverse the dismissal of the appeal of Order 6, affirm the dismissal of the appeal of Order 17, and vacate the award of attorney's fees.

---

\*     Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## II. FACTS AND PROCEEDINGS

### A. BP Announced The Sale Of Its Alaska Assets And Sought Approval To Transfer Its Interest In The Trans-Alaska Pipeline System To Harvest Alaska.

In 2019 BP p.l.c. (BP) announced it was planning to sell its Alaska oil and gas assets and exit Alaska. As part of this sale, "BP Pipelines (Alaska) Inc." (BPPA), a subsidiary of BP, agreed to sell "substantially all of its Alaska assets," including its interest in the Trans-Alaska Pipeline System (TAPS), to Harvest Alaska, LLC (Harvest Alaska).[1]

Alaska law requires pipeline carriers to obtain a certificate from the RCA before acquiring or operating pipeline facilities.[2] The RCA may "attach terms and conditions" to the required certificate if "necessary for the protection of the environment and for the best interests of the oil or gas pipeline facility and the general public."[3] The certificate cannot be transferred to a new owner without RCA approval.[4]

---

[1] Harvest Alaska is one of several affiliated companies that are wholly owned and controlled, through subsidiaries, by Hildebrand Enterprises. Harvest Alaska's direct parent company is Harvest Midstream I, L.P. (Harvest Midstream). The general partner of Harvest Midstream is Harvest Midstream Company (HMC). When BPPA first sought approval to transfer its interest in TAPS to Harvest Alaska, Harvest Alaska was a wholly owned, direct subsidiary of Hilcorp Alaska, LLC (Hilcorp Alaska), another company owned and controlled, through subsidiaries, by Hildebrand Enterprises. Hilcorp Alaska is a wholly owned, direct subsidiary of Hilcorp Energy I, L.P. (HEI). The general partner of HEI is Hilcorp Energy Company (HEC). Hildebrand Enterprises remains the ultimate owner of both Harvest Alaska (through Harvest Midstream and HMC) and Hilcorp Alaska (through HEI and HEC).

[2] AS 42.06.240(a) (requiring "a certificate of public convenience and necessity" issued by the RCA).

[3] AS 42.06.240(d).

[4] AS 42.06.305(a); *see also* AS 42.06.305(b) (providing RCA's decision whether to approve transfer "shall be based on the best interest of the public").

BPPA and Harvest Alaska applied to the RCA for approval to transfer BPPA's ownership interest in TAPS, its required certificate, and the operating authority under that certificate to Harvest Alaska. In connection with that application, Harvest Alaska and some of its affiliates filed certain required financial statements with the RCA,[5] together with a petition seeking confidential treatment of those statements under AS 42.06.445(d) and 3 AAC 48.045.[6]

**B.    The RCA Took Public Comment And Issued Order 6, Granting A Petition For Confidential Treatment Of Financial Statements.**

The RCA invited comments on the transfer application and the associated petition for confidential treatment of financial statements.[7] The RCA later said the comments it received "were split on whether [the RCA] should approve the applications as filed, or further scrutinize the transaction and consider imposing conditions on the approval of the application." The RCA noted that the "majority of the comments

---

[5]    *See* 3 Alaska Administrative Code (AAC) 48.625(a)(7)(B) (requiring application for transfer of certificate of public convenience and necessity to include "the applicants' most recent audited financial statements for the two most recent fiscal years preceding the date of the application").

[6]    *See* AS 42.06.445(d) (allowing objection to public disclosure of information and requiring RCA to withhold information "from public disclosure if the information adversely affects the interest of the person making written objection and disclosure is not required in the interest of the public"); 3 AAC 48.045(a) (describing procedure for petitioning RCA to classify record as confidential, including "identifying the record . . . and setting out good cause, including facts, reasons, or other grounds" for confidential treatment); 3 AAC 48.045(b) (providing that "[g]ood cause to classify a record as confidential under this section includes a showing that (1) disclosure of the record to the public might competitively or financially disadvantage or harm the person with confidentiality interest or might reveal a trade secret; and (2) the need for confidentiality outweighs the public interest in disclosure.").

[7]    The RCA also requested comment on a related motion that is not at issue in this appeal: Harvest Alaska had moved for a waiver of the requirement, found in 3 AAC 48.625(a)(7)(B), to provide the RCA with audited financial statements, explaining that it does not prepare audited financial statements. The RCA later granted the motion.

addressed the petitions for confidential treatment of the financial statements" and that "[m]any commenters urged denial of the petitions for confidential treatment."[8]

Valdez filed written comments asking the RCA to require Harvest Alaska and its affiliates to provide certain financial and operational information and to make that information publicly available. Valdez asserted that without this information, it was "impossible to adequately assess whether transfer of operating authority from BPPA to [Harvest Alaska] is in the best interest of Alaska or to identify appropriate terms, conditions, and limitations required to ensure that it is." Valdez asked the RCA to set a deadline for petitions from interested parties to intervene in the transfer proceeding and indicated it intended to file such a petition.

The RCA later requested additional documents from BPPA and Harvest Alaska, including financial statements from Hilcorp Energy I, L.P. (HEI), the immediate parent company of Hilcorp Alaska, an affiliate and former parent company of Harvest Alaska; Hilcorp Energy Company (HEC), the general partner of HEI; and BP Corporation North America, Inc., the indirect parent company of BPPA. The RCA also requested the asset purchase and sale agreements between BPPA and Harvest Alaska. BPPA and companies affiliated with Harvest Alaska petitioned for confidential treatment of these documents under AS 42.06.445(d) and 3 AAC 48.045, as Harvest Alaska had done when filing its financial statements and those of its other affiliates. BPPA and Harvest Alaska also petitioned for confidential treatment of their purchase and sale agreement.

The RCA scheduled a public input hearing, noting that additional public process was "appropriate given the importance of the transaction and the level of

---

[8] The RCA was referring here to both the petition at issue in this appeal and similar petitions filed in two other RCA proceedings related to BPPA's sale of assets to Harvest Alaska.

interest by the public in this transaction." At that hearing, Valdez urged the RCA to deny the petitions for confidential treatment of the companies' financial statements.

After the hearing, the RCA asked BPPA and Harvest Alaska whether any of the financial statements they submitted were required to be filed with a federal agency. The RCA explained that it was requesting this information because it interpreted AS 42.06.445(c) to preclude the RCA from disclosing "documents related to the finances of a pipeline carrier subject to federal jurisdiction" unless those documents were required to be filed with a federal agency.[9] BPPA and Harvest Alaska responded that they were subject to federal jurisdiction but not required to file their financial statements with a relevant federal agency,[10] so AS 42.06.445(c) required the RCA to keep their financial statements confidential.

Valdez submitted a comment to the RCA arguing that confidential treatment of the financial statements was not justified under AS 42.06.445(c). The RCA treated Valdez's filing as an opposition to the petitions for confidential treatment of the financial statements.[11] In March 2020 the RCA issued Order 6, in which it

---

[9]     *See* AS 42.06.445(c) ("A document filed with the [RCA] that relates to the finances or operations of a pipeline subject to federal jurisdiction and that is in addition to or other than the copy of a document required to be filed with the appropriate federal agency is open to inspection only by an appropriate officer or official of the state for relevant purposes of the state.").

[10]     BPPA and Harvest Alaska acknowledged that they had filed their financial statements with the Federal Trade Commission and the Bureau of Land Management, but they argued neither agency is "the appropriate federal agency" at issue in AS 42.06.445(c).

[11]     *See* 3 AAC 48.045(c) ("A person who opposes a petition filed under (a) of this section may file a statement of opposition to the petition within five days of the filing of the petition with the commission.").

concluded that AS 42.06.445(c) required it to treat the financial statements as confidential information.[12]

## C. Valdez Appealed Order 6 And Moved For Expedited Consideration, But Took No Further Action In The Appeal Of Order 6 To The Superior Court.

Valdez appealed Order 6 to the superior court in April 2020. The RCA moved to dismiss Valdez's appeal, arguing that Order 6 was not a final order subject to appeal, but the court denied the motion to dismiss. Valdez filed a motion to expedite consideration and a renewed motion for expedited consideration, but the court denied both motions. In its order denying Valdez's renewed motion for expedited consideration, the court noted that because the RCA had filed the agency record, it was "now up to Valdez to file its brief, after which the RCA will have 30 days to respond," and that "[o]nce briefing is complete, the court will rule on the matter as expeditiously as possible." Valdez took no further action in its appeal of Order 6 to the superior court.

## D. The RCA Issued Order 17, Approving BPPA And Harvest Alaska's Transfer Application.

The RCA proceedings continued through 2020. In April the RCA issued an order directing BPPA and Harvest Alaska to provide more information about their operations, financial resources, and dismantlement, removal, and restoration obligations. In response BPPA and Harvest Alaska petitioned for confidential treatment under AS 42.06.445(c), AS 42.06.445(d), and 3 AAC 48.045 of some of the information filed in their response. The RCA granted the request and held the filings confidential. The RCA then requested additional information; BPPA and Harvest Alaska responded and again requested confidential treatment of certain information. The RCA granted that request as well. The RCA subsequently requested still more

---

[12] Having decided AS 42.06.445(c) required confidential treatment, the RCA concluded the requests by BPPA and companies affiliated with Harvest Alaska for confidential treatment under 3 AAC 48.045 were moot.

information and, as before, granted the companies' petitions for confidential treatment of their financial statements.

Valdez took almost no action in the administrative proceedings after the RCA issued Order 6. Valdez did not request access to subsequently filed financial statements or object to later petitions for confidential treatment filed by Harvest Alaska and some of its affiliates. Between March and December 2020, Valdez made only one additional filing with the RCA: an informational filing notifying the RCA that Moody's Investors Service had downgraded HEI's credit rating.

In December the RCA issued Order 17, approving BPPA and Harvest Alaska's transfer application. The RCA found that Harvest Alaska satisfied the statutory requirements for holding the required certificate and "that it is in the best interest of the public to approve transfer to Harvest Alaska." BPPA and Harvest Alaska closed the transaction later that month.

### E. Valdez Appealed Order 17 To The Superior Court.

In 2021 Valdez appealed Order 17 to the superior court, arguing that, by approving the transfer on a "secret record," the RCA had infringed on the constitutional and statutory rights of "citizens and interested persons" to access, oversee, and engage with public administrative proceedings and records. Valdez asserted that the RCA had infringed on free-speech rights by preventing the "[m]eaningful access to public proceedings and records" that would have been necessary to provide informed comments on the proposed transfer. Valdez also asserted that the RCA had infringed on due process rights by "not designating parties, not holding an evidentiary hearing on contested issues of fact, keeping the record secret, and basing Order 17 on conclusory and unsupported factual findings and legal holdings." Finally, Valdez argued that the RCA "did not fully consider the public interest" when issuing Order 17.

**F.** **The Superior Court Dismissed Both The Appeals Of Orders 6 And 17 And Awarded Attorney's Fees To BPPA and Harvest Alaska.**

The superior court consolidated Valdez's appeals of Orders 6 and 17. The RCA filed a motion to dismiss, as did Harvest Alaska and four of its affiliates: Hilcorp Alaska, Harvest Midstream, HEI, and HEC. They argued Valdez lacked standing to appeal, Valdez had failed to exhaust its administrative remedies, and the appeals were moot because the larger transaction between BPPA and Harvest Alaska had already closed. Valdez opposed the motions to dismiss.

The superior court dismissed Valdez's appeals, concluding that: (1) Valdez had standing to appeal Order 6 but did not have standing to appeal Order 17; (2) Valdez was required to exhaust its administrative remedies before the RCA, but failed to do so as to both Orders 6 and 17; and (3) the appeals of both Orders 6 and 17 were moot because "[t]he transfer of BP's interest in TAPS to [Harvest Alaska and its affiliates] has long since been effectuated, and a judicial determination that the RCA erred in any of its confidentiality rulings would not, without further court order, undo that complex and final transaction."

After the superior court dismissed Valdez's appeal, BPPA and Harvest Alaska moved for attorney's fees. The court granted their motion in part.

Valdez now appeals the superior court's order dismissing its appeals of Orders 6 and 17 and awarding attorney's fees to BPPA and Harvest Alaska.[13]

## III. STANDARD OF REVIEW

Whether a party has standing to appeal an agency decision, whether an issue is moot, and whether a party must exhaust administrative remedies are questions

---

[13] We consolidated Valdez's appeals of the decisions dismissing its merits challenges to Orders 6 and 17 and awarding attorney's fees to BPPA and Harvest Alaska.

of law to which we apply our independent judgment.[14]  If exhaustion is required, we "review for abuse of discretion a superior court's decision regarding whether a party has exhausted the administrative remedies available or whether the party's failure to exhaust remedies should be excused."[15]  We reverse such a decision for abuse of discretion only when we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[16]

## IV.  DISCUSSION

The superior court's order dismissing the appeals of Orders 6 and 17 applied the doctrines of standing, mootness, and exhaustion of remedies.  We consider application of each of these doctrines to the orders in question.  Finally, we address the award of attorney's fees.

Because we conclude that Valdez was required to exhaust administrative remedies with respect to Order 17 and failed to do so without a valid excuse, we affirm the superior court's dismissal of that appeal.  We reverse the dismissal of the appeal of Order 6 because we conclude Valdez had standing to bring that appeal, it exhausted administrative remedies, and the appeal was not moot.  Because we reverse one of the decisions on which the superior court based its award of attorney's fees, we vacate that award.  We remand this case for further proceedings.

---

**14**    *City of Kenai v. State, Pub. Utils. Comm'n*, 736 P.2d 760, 762 (Alaska 1987) (standing); *Regul. Comm'n of Alaska v. Matanuska Elec. Ass'n*, 436 P.3d 1015, 1027 (Alaska 2019) (mootness); *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 65 (Alaska 2001) (exhaustion).

**15**    *Andrade*, 23 P.3d at 65.

**16**    *State v. Beard*, 960 P.2d 1, 5 (Alaska 1998) (quoting *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98 (Alaska 1992)).

**A.      Valdez Has Standing To Appeal Both Orders 6 And 17.**

Standing "is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[17]  We interpret standing broadly, "favoring increased accessibility to judicial forums."[18]  We use a three-element test to decide whether a challenger to an agency proceeding has standing to appeal an agency's decision.[19]  To have standing, a challenger must (1) be directly interested in the proceeding, (2) be factually aggrieved by the decision, and (3) have participated in the proceeding.[20]

Valdez has a direct interest in the proceedings that resulted in the issuance of Orders 6 and 17, it was factually aggrieved by the RCA's decision to issue those orders, and it participated sufficiently in the RCA's decision-making process that led to the orders.  We therefore conclude that Valdez has standing to challenge both orders.[21]

---

[17]      *Trs. for Alaska v. State, Dep't of Nat. Res.*, 736 P.2d 324, 327 (Alaska 1987).

[18]      *Id*. (quoting *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976), *superseded by statute on other grounds*, Ch. 257, § 3, SLA 1976, *as recognized in Sullivan v. Resisting Env't Destruction on Indigenous Lands*, 311 P.3d 625 (Alaska 2013)).

[19]      *City of Kenai*, 736 P.2d at 762-63 (Alaska 1987).

[20]      *Id.* at 762-63.

[21]      The appellees argue that Valdez failed to satisfy one or more of the requirements for standing because Valdez did not "unambiguously and strenuously object[]" to the "main issue" in the proceedings before the RCA or oppose the RCA's position on the "main subject" of those proceedings.  The appellees also argue that Valdez lacked standing because it failed to use the RCA's protest procedures, to oppose confidentiality petitions after Order 6, or otherwise "prompt[]" the RCA to consider taking corrective actions the agency "was not required to take."  But our standing analysis does not require a challenger to have opposed the agency's position on any one particular issue or by using any particular procedure.  Participation by a directly interested, factually aggrieved party that challenges the agency's position on any significant issue is sufficient to establish standing.  To the extent that the appellees' arguments speak instead to whether Valdez exhausted the reasonably available administrative remedies, we address those arguments below.

### 1.    Valdez had a direct interest in the proceedings.

Whether a litigant has standing to appeal an agency decision depends in part on whether the litigant was "directly interested" in the proceedings that led to the decision.[22]  In *City of Kenai* we concluded that Kenai established standing to appeal an agency decision because it was "directly interested in the proceedings," but we did not further define a "direct interest."[23]  The Pennsylvania Supreme Court has concluded that a direct interest in an administrative proceeding may be established by showing a "material" interest that is "discrete" to some party or class of parties.[24]  We adopt this standard and conclude Valdez has demonstrated a direct interest in the administrative proceedings that led to the issuance of Orders 6 and 17.

Valdez's interest in the release of financial and operational information held confidential by the RCA is material because that information is highly relevant to Valdez's ability to assess and comment on Harvest Alaska's fitness to operate TAPS.

Valdez's interest in this case is discrete because Valdez is uniquely affected by the transfer of the TAPS operating authority.  Its interest is not speculative or generalized.  In fact, it is difficult to imagine any individual or entity that has a greater direct interest than Valdez in this transfer and in Harvest Alaska's operational and financial capacity to operate TAPS safely and effectively.  Significant TAPS facilities are located within Valdez, including the Valdez Marine Terminal, which is used by tankers moving oil from TAPS.  Transfer of the certificate under Order 17 therefore implicated Valdez's unique interests, including its interests in protecting its

---

[22]    *City of Kenai*, 736 P.2d at 762-63.

[23]    *Id.* at 760, 763 (acknowledging Kenai's "legally recognized interest" at stake in challenged proceeding).

[24]    *See, e.g.*, *Citizens Against Gambling Subsidies, Inc. v. Pa. Gaming Control Bd.*, 916 A.2d 624, 628 (Pa. 2007) ("[T]he direct interest requirement retains the function of differentiating material interests that are discrete to some person or limited class of persons from more diffuse ones that are common among the citizenry.").

environment and citizens by ensuring the safe operation of TAPS. As Valdez explained in its public comments to the RCA:

> The economic and environmental well-being of the citizens of Valdez depends on safe, environmentally sound, and effective TAPS operations. Accordingly, the financial and organizational capacity of [Harvest Alaska] to properly resource TAPS operations and to respond to oil spills and other safety or environmental incidents is of critical importance for the citizens of Valdez.

Finally, contrary to the RCA's arguments, our test for standing does not require a challenger to show "a 'legally recognized interest' that was . . . 'factually aggrieved' by the agency decision."[25] We held in *City of Kenai* that showing an injury to a "legally recognized interest" is sufficient to satisfy the first prong of the standing analysis, but we did not hold that such a showing was necessary to establish standing.[26] Whether Valdez has a legally recognized interest in public access to the financial information the RCA has treated as confidential goes to the merits of this case, which the superior court did not address and which are not before us in this appeal. Valdez is directly interested in the proceedings that resulted in Order 6 and Order 17, even though the legal recognition of its asserted interest remains undecided.

Because Valdez clearly asserted a material, discrete interest in the administrative proceedings that led to the issuance of Orders 6 and 17, Valdez has shown the direct interest in the proceedings that is necessary to establish standing.

### 2. Valdez was factually aggrieved by the RCA's decisions.

To demonstrate factual aggrievement for purposes of standing to challenge the RCA's decisions, Valdez must show a personal stake in the proceedings and an interest that was adversely affected by Orders 6 and 17. We apply an "interest-injury analysis" to determine whether a party was aggrieved and thus has standing to

---

[25] The RCA quotes *City of Kenai*, 736 P.2d at 760, 763.

[26] *Id.* at 760, 762-63.

appeal an agency decision.[27]  "To establish interest-injury standing, a litigant must show:  (1) 'a sufficient personal stake in the outcome of the controversy' and (2) 'an interest which is adversely affected by the complained-of conduct.' "[28]

We agree with Valdez that it was factually aggrieved by Orders 6 and 17 because the RCA's decisions to keep certain documents confidential and approve the transfer of certificate and operating authority from BPPA to Harvest Alaska before releasing those documents adversely affected Valdez's ability to participate effectively in the transfer proceedings and make informed comments on the proposed transfer.[29]

We are not persuaded by Appellees' arguments that Valdez suffered no actual harm or that its claims of future injury are too uncertain to establish factual aggrievement.[30]  Valdez asserted it had an interest in evaluating Harvest Alaska's fitness as an operator based on information held confidential by the RCA.  Orders 6 and 17 adversely affected those interests by precluding Valdez's ability to participate

---

[27]     *PLC, LLC v. State, Dep't of Nat. Res.*, 484 P.3d 572, 577-81 (Alaska 2021); *see, e.g.*, *City of Kenai*, 736 P.2d at 761-63 (concluding Kenai was "factually aggrieved" where administrative proceeding made Kenai liable for certain costs).

[28]     *PLC*, 484 P.3d at 578 (footnotes omitted) (quoting *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009)).

[29]     Valdez also argues that RCA's actions aggrieved its constitutional free speech and due process rights to access information and participate in public proceedings.  Because we conclude that Valdez was factually aggrieved for other reasons, we do not address Valdez's alternative arguments.

[30]     BP argues that this case is similar to that underlying a North Dakota Supreme Court decision, *Shark v. U.S. W. Commc'ns, Inc.*, 545 N.W.2d 194 (N.D. 1996), in which that court held that the appellant did not have standing.  But this analogy is inapposite.  The appellant in *Shark* was not a customer of the telephone exchange being transferred to independent phone companies, and transfer approval was the subject of the appeal; the possibility of harm was too remote and speculative and the customer's personal stake minimal.  *Id.* at 199-200.  The present case is different.  Unlike the appellant in *Shark*, Valdez articulates identifiable harms to its interests, the consequences of which will affect the community of Valdez.

as an informed commenter in the transfer proceedings. These agency actions hampered Valdez's ability to assess the fitness of Harvest Alaska to safely and responsibly operate TAPS and Valdez's ability to raise any resulting concerns with the RCA. Thus Valdez demonstrated it was "factually aggrieved" by the agency decisions it seeks to appeal.[31]

### 3. Valdez's participation in the proceedings was sufficient to establish standing.

Valdez is correct that its participation in the administrative proceedings "equaled or exceeded" the appellant's participation in the case in which we established the requirements for standing to appeal an agency decision.[32] In *City of Kenai* we held that a challenger had standing to appeal an agency's decision after submitting a single written comment, even though the challenger declined to intervene as a formal party and did not participate in a subsequent public hearing.[33] By contrast, in this case Valdez stressed its opposition by submitting two substantive written comments, requesting an evidentiary hearing, and participating in the public input hearing.

Valdez participated to a significantly greater degree than the appellant with standing in *City of Kenai*. Valdez's participation was sufficient to give the RCA actual notice of Valdez's specific concerns, as shown by the fact that Orders 6 and 17 addressed Valdez's concerns at length.[34] That participation fully served the purposes of the "participation" requirement and was sufficient to establish standing.

We disagree with BPPA's argument that Valdez's participation in the proceedings was insufficient to establish standing because the issues Valdez raised were collateral or unrelated to Order 17. While Valdez's participation in the proceedings

---

[31] *See City of Kenai*, 736 P.2d at 762-63.

[32] *See id.* at 760-63.

[33] *Id.* at 761, 763.

[34] The RCA characterized Valdez's comments as "an opposition to Petitioner's supplemented petitions for confidential treatment."

focused on access to the applicants' financial statements, Valdez sought access to that information, at least in part, for the purpose of commenting on the transfer of the certificate and the fitness of the proposed transferee — the ultimate issues at stake in Order 17. By issuing Order 17, the RCA ensured Valdez would not have the opportunity to make comments based on the contents of the financial statements of Harvest Alaska and its affiliates before the transfer was approved. Valdez's participation was thus sufficiently related to Order 17 to establish Valdez's standing to challenge that order.

We disagree with the RCA's suggestion that "nothing distinguishes Valdez from every other commenter with respect to standing." The RCA itself treated Valdez's comments as a formal "opposition" to the petitions for confidential treatment of certain financial statements and addressed Valdez's comments at length in Orders 6 and 17.

Valdez sufficiently participated in the administrative proceedings to satisfy the third and final standing requirement. Because Valdez satisfied all three standing requirements to challenge an administrative decision,[35] we conclude Valdez had standing to appeal both Orders 6 and 17.

## B. Valdez's Appeals Of Orders 6 And 17 Are Not Moot.

Our mootness doctrine is a prudential rule that precludes courts from hearing cases in which they lack the power to grant meaningful relief.[36] "A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[37] "In order to be an 'actual

---

[35] *See City of Kenai*, 736 P.2d. at 762-63.

[36] *See Regul. Comm'n of Alaska v. Matanuska Elec. Ass'n*, 436 P.3d 1015, 1027 (Alaska 2019).

[37] *Fairbanks Fire Fighters Ass'n, Loc. 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002) (citations omitted).

controversy,' the controversy 'must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"[38] In other words, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests,"[39] and a court must be able to provide some form of relief.[40]

In this case, the parties' arguments about mootness turn on whether the issuance of Order 17 and the closing of the transaction between BPPA and Harvest Alaska moot Valdez's arguments about its right to access the financial statements that the RCA designated as confidential. The appellees argue no live controversy remains now that the transaction between BPPA and Harvest Alaska has been completed; they assert there is no remaining reason to provide access to the financial statements of Harvest Alaska and its affiliates. Valdez responds that it has an ongoing interest in the RCA's interpretation of the applicable confidentiality procedures and in disclosure of the financial statements.

We conclude that Valdez's appeals are not moot. Both the appeals of Orders 6 and 17 present live controversies susceptible to judicial resolution, including disputes about the interpretation of AS 42.06.445(c) and the scope of Valdez's right to access certain financial statements relevant to Valdez's interests in future proceedings before the RCA.

---

[38] *Alaska Jud. Council v. Kruse*, 331 P.3d 375, 379 (Alaska 2014) (quoting *Jefferson v. Asplund*, 458 P.2d 995, 999 (Alaska 1969)).

[39] *Jefferson*, 458 P.2d at 999 (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240-41 (1937)).

[40] *Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 366 (Alaska 2014) ("A claim is moot . . . if it is *impossible* to provide the relief sought." (emphasis added)).

Alaska regulations require certificate holders to make their premises and records available for inspection by the RCA's commissioners or their representatives.[41] Accordingly, Order 17 requires Harvest Alaska to make ongoing disclosures to the RCA, and the RCA's docket in this matter remains open. The RCA also retains the authority to "amend, modify, suspend, or revoke" the certificate authorizing Harvest Alaska to operate TAPS.[42] The RCA could take any of these actions upon its own motion or upon public complaint.[43] For example, a complainant might raise new issues to the RCA's attention if given the opportunity to review the financial and operational information currently treated as confidential under Order 6. For these reasons, neither the issuance of Order 17 nor the closing of the transaction between BPPA and Harvest Alaska moots Valdez's interest in accessing information that could inform its participation in future RCA proceedings.

The disputes at issue in the appeals of Orders 6 and 17 are susceptible to judicial resolution. We reject the appellees' arguments that a superior court decision evaluating the RCA's interpretation of AS 42.06.445(c) would be an "advisory opinion" providing only a "collateral" remedy without "practical effect" or that the relief Valdez seeks would only allow it to make "abstract" comments that would be "untethered from any decision actually pending at the RCA." As explained above, a superior court decision reversing the RCA's interpretation of AS 42.06.445(c) could result in public disclosure of financial and operational information the RCA is currently

---

[41]    3 AAC 48.050(b) ("A member of the commission advisory staff and any . . . authorized representative of the commission must . . . be allowed access to the premises of any . . . pipeline carrier . . . to investigate, inspect, examine, evaluate, or analyze its rates, services, facilities, accounts, books, records, contracts, and operating practices . . . or to implement . . . any jurisdictional function of the commission.").

[42]    *See* AS 42.06.300.

[43]    *See id.* (providing for RCA action "[u]pon complaint or upon its own motion").

holding confidential under Order 6. Access to that information could inform future public participation in administrative proceedings before the RCA, including proceedings to modify, add conditions to, or revoke the certificate authorizing Harvest Alaska to operate TAPS.[44]

We are not persuaded by the RCA's arguments that there is no appropriate judicial remedy in this case because the relief Valdez seeks would "upend the RCA's confidentiality framework" or because allowing Valdez's appeal to proceed "creates uncertainty" about confidentiality for other energy companies in Alaska. While we do not decide the merits of the RCA's interpretation of AS 42.06.445(c) today, if that issue were before us and we were persuaded that the RCA's interpretation was incorrect, we would correct such a mistake. Neither we nor the superior court will avoid correcting a mistake of law merely because the correction could have a disruptive effect. And the possibility that judicial intervention could be disruptive does not mean a case is no longer susceptible to judicial resolution.

Similarly, we are not persuaded that Valdez's appeal is moot because it did not seek a stay of Order 17 to prevent the transaction from closing. BPPA, citing *American Grain Ass'n v. Lee-Vac, Ltd.*[45] and *Thibaut v. Ourso*,[46] argues that mootness prevents consideration of an appeal where the appellant failed to seek a stay of the challenged decision, leaving the appellate court "powerless to grant the appellant's requested relief." However, Valdez's failure to seek a stay does not render its appeal moot because a court would be able to provide meaningful relief to Valdez even in the absence of a stay.

---

[44]    *See* AS 42.06.300 ("Upon complaint or upon its own motion the commission, after due notice and hearing and for good cause shown, may amend, modify, suspend, or revoke a certificate, in whole or in part.").

[45]    630 F.2d 245 (5th Cir. 1980).

[46]    705 F.2d 118 (5th Cir. 1983).

-19-                                                                          7697

This case is unlike *Alaska Spine Institute Surgery Center, LLC v. State, Department of Health & Social Services*,[47] on which the appellees rely for the proposition that challenges to certain agency decisions become moot once an underlying transaction is complete. In *Alaska Spine Institute*, we held that a challenge to an agency's decision to authorize the construction of a building was moot once the building was complete.[48] But unlike the challenger in *Alaska Spine Institute*, Valdez is not seeking to undo an entire transaction that was subject to regulatory approval.[49] Valdez instead challenges only "portions of" Orders 6 and 17. Unlike the agency action in *Alaska Spine Institute*, the orders Valdez challenges did more than merely authorize a transaction;[50] the orders also ruled on the confidentiality of financial statements on which the RCA relied in making its decision and set forward-looking conditions on Harvest Alaska's authority to operate TAPS. Finally, unlike the challenger in *Alaska Spine Institute*, Valdez could be entitled to relief if its challenge is successful.[51] *Alaska Spine Institute* does not control this case, and Valdez's appeals of Orders 6 and 17 are not moot.

## C. Valdez Exhausted Administrative Remedies With Respect To Order 6, But Not With Respect To Order 17.

The exhaustion-of-remedies doctrine limits the availability of judicial relief "until the available administrative remedies have been exhausted."[52] "[T]he basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence — to make a factual record, to apply its

---

[47] 266 P.3d 1043 (Alaska 2011).

[48] *Id.* at 1044-45.

[49] *Cf. id.* at 1044.

[50] *Cf. id.* at 1043-44.

[51] *Cf. id.* at 1044.

[52] *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 450 (Alaska 2012) (quoting *Eidelson v. Archer*, 645 P.2d 171, 176 (Alaska 1982)).

expertise, and to correct its own errors so as to moot judicial controversies."[53] We apply the doctrine by asking (1) whether exhaustion of remedies is required,[54] (2) whether the complainant exhausted those remedies,[55] and (3) whether any failure to do so is excused because exhaustion would be "futile or severely impractical."[56]

If an appellant fails to exhaust reasonably available administrative remedies, that failure may nonetheless be excused if further engagement with the agency would have been futile. Exhaustion is futile if "the administrative remedy is inadequate" or if there is "certainty of an adverse decision."[57] But we have refused to excuse exhaustion even if an adverse decision is "highly possible" rather than certain.[58]

### 1.     Valdez was required to exhaust administrative remedies.

Exhaustion is required when a statute or regulation provides for administrative review or remedies.[59] When a statute or regulation is silent on the need for exhaustion of administrative remedies, an exhaustion requirement may be "judicially created."[60] "The requirement of exhaustion of administrative remedies

---

**53**     *Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 206 (Alaska 1989) (quoting *Ben Lomond, Inc. v. Mun. of Anchorage*, 761 P.2d 119, 121-22 (Alaska 1988)).

**54**     *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 66 (Alaska 2001).

**55**     *Id.*

**56**     *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 560-61 (Alaska 2004).

**57**     *Bruns v. Mun. of Anchorage, Anchorage Water & Wastewater Util.*, 32 P.3d 362, 371 (Alaska 2001) (quoting *Eidelson*, 645 P.2d at 181); *Standard Alaska Prod. Co.*, 773 P.2d at 209.

**58**     *Standard Alaska Prod. Co.*, 773 P.2d at 209.

**59**     *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 450 (Alaska 2012).

**60**     *Standard Alaska Prod. Co.*, 773 P.2d at 206 ("A dismissal may be predicated on a party's failure to comply with exhaustion requirements that have been

'turns on an assessment of the benefits obtained through affording an agency an opportunity to review the particular action in dispute,' "[61] balanced against "the complainant's interest in the availability of adequate redress for his or her grievances."[62]

The relevant regulations governing RCA proceedings do not require any particular grievance procedure to be pursued before a complainant may seek judicial review.[63] The statute providing for judicial review of final orders by the RCA likewise does not require exhaustion of administrative remedies.[64] However, we conclude that a judicially recognized exhaustion requirement in proceedings before the RCA seeking disclosure of confidential information or opposing the transfer of a certificate furthers the purposes of the exhaustion-of-remedies doctrine.

Several statutes delegate to the RCA the authority to prescribe regulations for practice and procedure.[65] We hold that interested parties must exhaust administrative remedies afforded by the RCA before seeking judicial review of a decision by the RCA denying a request for disclosure of confidential information or approving the transfer of a certificate. Requiring interested parties to exhaust the RCA's procedures before appealing to the superior court under these circumstances serves the purposes of the exhaustion-of-remedies doctrine by allowing the RCA to

---

'judicially created,' though not mandated by statute." (citing *Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir. 1985))); *Reid*, 765 F.2d at 1462 ("Only if there is no statutory exhaustion requirement may we exercise our discretion to apply judicially-developed exhaustion rules.").

[61]     *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 66 (Alaska 2001) (quoting *Mt. Juneau Enters., Inc. v. City & Borough of Juneau*, 923 P.2d 768, 776 (Alaska 1996)).

[62]     *Kleven v. Yukon-Koyukuk Sch. Dist.*, 853 P.2d 518, 524 (Alaska 1993).

[63]     *See* 3 AAC 48.010-.190 (absence).

[64]     *See* AS 42.06.480.

[65]     *See, e.g.*, AS 42.05.151; AS 42.06.140(a)(5).

"make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."[66]  We conclude Valdez was required to exhaust administrative remedies before appealing Orders 6 and 17.

### 2. Valdez exhausted administrative remedies with respect to Order 6.

We conclude that Valdez satisfied the exhaustion-of-remedies requirement with respect to Order 6 because it participated in the relevant proceedings before the RCA and made its position clear on the record.[67]  Valdez unambiguously requested that the RCA make the applicants' financial statements available to the public.  Valdez submitted detailed comments that placed the RCA on notice of its concerns.  These actions fulfilled the purposes of the exhaustion requirement, including the creation of a factual record, allowing the RCA to exercise its expertise, and giving the agency the opportunity to correct its own errors without judicial involvement.[68]  No further agency proceedings are necessary to make the RCA's decision on Valdez's request final and fit for review by the superior court.  Valdez's participation was therefore sufficient to satisfy the exhaustion-of-remedies requirement with respect to Order 6, and we conclude it was an abuse of discretion to dismiss Valdez's appeal of Order 6 for failure to exhaust administrative remedies.

The superior court found there were six administrative remedies that Valdez failed to pursue before filing its appeal of Order 6.  But we conclude these remedies were either not reasonably available or not required under the circumstances.

---

[66]   *Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 206 (Alaska 1989) (quoting *Ben Lomond, Inc. v. Mun. of Anchorage*, 761 P.2d 119, 121-22 (Alaska 1988)).

[67]   *Accord Safir v. Kreps*, 551 F.2d 447, 452 (D.C. Cir. 1977) (holding, where no exhaustion requirement was codified in statute or regulation, "the obligation to exhaust is discharged" so long as someone "put [the appellant's] objection on the record").

[68]   *See Standard Alaska Prod. Co.*, 773 P.2d at 206.

Because we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling" that Valdez failed to exhaust the available administrative remedies,[69] we conclude that ruling was an abuse of discretion.

The superior court observed that Valdez did not intervene in the administrative proceeding,[70] file a protest,[71] file a competing application,[72] oppose the confidential treatment of any documents other than those at issue in Order 6, "utilize or exhaust the RCA's procedures to access confidential documents,"[73] or "provide the RCA with any other meaningful indication that it believed the agency's procedures receiving public input were deficient."[74] The superior court explained that it did not "find that Valdez was required to have exhausted each procedure described." But it held that Valdez's "failure to take any of these actions is fatal to its position." The appellees likewise argue that Valdez failed to exhaust its administrative remedies because it did not pursue any of these procedures. We disagree.

Under the circumstances of this case, a formal intervention was not a reasonably available remedy. The RCA's regulations do not allow interventions in

_____

**69**    *See State v. Beard*, 960 P.2d 1, 5 (Alaska 1998) (quoting *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98 (Alaska 1992)).

**70**    *See* 3 AAC 48.110(a).

**71**    *See* 3 AAC 48.654(b), (e).

**72**    3 AAC 48.645(c) ("If the commission finds that two or more complete mutually exclusive applications have been timely filed, a public hearing will be held to afford an opportunity for examination of the applications on a comparative basis.").

**73**    *See* 3 AAC 48.049.

**74**    While the RCA mentions the superior court's finding that Valdez did not "provide the RCA with . . . meaningful indication that it believed the agency's procedures for receiving public input were deficient," none of the appellees argues that the exhaustion-of-remedies doctrine requires Valdez to provide such an indication in the absence of other reasonably available administrative procedures. We therefore do not address this issue.

"nonhearing matters."[75]  Accordingly, because the RCA did not hold a hearing on the petitions for confidential treatment, Valdez never had the opportunity to file a petition to intervene.  Intervention was therefore not a reasonably available remedy Valdez was required to exhaust before filing an appeal of Order 6.

Similarly, filing a protest before the RCA was not a reasonably available remedy.  The protest deadline passed nearly two months before the RCA first raised the possibility of using AS 42.06.445(c) as grounds for confidential treatment of the financial statements at issue.  The RCA's first confidentiality rulings based on AS 42.06.445(c) came another month later in Order 6.  BPPA correctly observes that "Valdez could have attempted to file a protest . . . together with a motion to allow a late-filed protest under 3 AAC 48.805."  While we accept BPPA's premise, we decline to hold that a remedy is reasonably available when pursuing that remedy would require a party first to seek discretionary relief from an administrative deadline.  Under the circumstances of this case, filing a protest was not a reasonably available remedy for Valdez.

Filing a competing application to operate TAPS was not a remedy that was reasonably available to Valdez.  Valdez is a municipality, not a pipeline operator.  Filing a competing application was therefore not a remedy Valdez was required to exhaust before filing an appeal.[76]

---

[75]  3 AAC 48.110(a) ("Petitions for permission to intervene as a party will be considered only in those cases that are to be decided upon an evidentiary record after notice and hearing . . . .  The commission does not grant formal intervention, as such, in nonhearing matters . . . .").

[76]  *See Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 560-61 (Alaska 2004) (holding exhaustion "may be excused where the attempt to exhaust administrative remedies is futile or *severely impractical*" (emphasis added)).

Finally, 3 AAC 48.049(b) did not require Valdez to file a written motion requesting access to the confidential documents at issue in Order 6[77] or to oppose petitions to designate other documents (filed after Order 6 but before Order 17) as confidential before appealing Order 6 to the superior court. The failure to file a written motion is not fatal to Valdez's appeal because Valdez's written and oral comments opposing confidential treatment of the applicants' financial statements satisfied all of the purposes of the exhaustion-of-remedies doctrine with respect to Order 6. Duplicating that effort by filing a written motion pursuant to 3 AAC 48.049(b) would have had no practical effect. Furthermore, requesting direct, non-public access to the confidential financial statements or opposing confidential treatment of other documents would not have given Valdez the relief it sought, which was public access to the financial statements at issue in Order 6.

Valdez exhausted the available administrative remedies before appealing Order 6 and it was an abuse of discretion to conclude otherwise. We therefore reverse the decision dismissing Valdez's appeal of Order 6 on these grounds.

### 3. Valdez did not exhaust administrative remedies with respect to Order 17; its failure is not excused.

As we understand Valdez's arguments, Valdez is appealing Order 17 primarily to challenge the procedures the RCA followed when issuing Order 17, not to seek reversal of Order 17. Although Order 17 is the RCA's approval of the transfer of BPPA's certificate and operating authority to Harvest Alaska, Valdez insisted at oral argument that it "was not protesting the transfer of the certificate" and that it was "not trying to block the transaction" between BPPA and Harvest Alaska. Instead, Valdez appears to be appealing Order 17 primarily to obtain public disclosure of documents

---

[77] 3 AAC 48.049(b) ("A person may file a written motion requesting access to a record that the commission has designated as confidential."); *see also* 3 AAC 48.049(d) (describing procedure for deciding whether to grant or deny access).

filed and designated as confidential after the RCA issued Order 6 but before it issued Order 17.[78] We conclude that Valdez failed to exhaust administrative remedies with respect to either form of relief in its appeal of Order 17.

### a. Valdez did not exhaust available remedies for opposing the transfer under Order 17; its failure is not excused.

If Valdez intended to oppose the transfer of BPPA's certificate and operating authority to Harvest Alaska, it failed to exhaust administrative remedies required to object to the transfer. In contrast to Valdez's written comments placing the RCA on notice of its concerns about confidential treatment of the applicants' financial statements leading up to Order 6, Valdez's scant participation in the proceedings leading up to the issuance of Order 17 did not give the RCA an opportunity to address Valdez's objections by developing a factual record, applying its expertise, or correcting any errors it may have made.[79] To exhaust the available administrative remedies for an objection to the transfer, Valdez would have needed to petition to intervene and file a protest against the transfer of the certificate.[80] It did neither. Valdez has not shown that the available administrative remedies for challenging the transfer at issue in Order 17 were inadequate or that the RCA was certain to reject its arguments if it raised them properly.[81] Accordingly, Valdez's failure to exhaust the available administrative remedies to object to the transfer at issue in Order 17 is not excused.

---

[78] For purposes of the exhaustion-of-remedies analysis, we assume without deciding that it would be possible for the RCA to provide public disclosure of these documents without vacating or reversing its decision approving the transfer of BPPA's certificate and operating authority to Harvest Alaska.

[79] *See Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 206 (Alaska 1989).

[80] *See* 3 AAC 48.110 (intervention); 3 AAC 48.654(b) (protest).

[81] *Cf. Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982) (excusing failure to exhaust administrative remedies where pursuing those remedies "would be futile due to the certainty of an adverse decision").

**b. Valdez did not exhaust available remedies for opposing confidential treatment of documents filed after the RCA issued Order 6; its failure is not excused.**

Valdez participated in the RCA proceedings leading up to Order 6, but after the RCA issued Order 6, Valdez failed to engage meaningfully in the administrative process. It made no further requests for access to confidential information following Order 6, and did not oppose any further rulings or petitions for confidentiality. Valdez was required to engage in the administrative proceedings with respect to this later-filed information before appealing to the superior court in order to give the RCA appropriate opportunities "to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."[82] Yet Valdez failed to do so, and it therefore failed to exhaust the available administrative remedies with respect to rulings on confidentiality rendered by the RCA after Order 6.

Valdez's failure to exhaust the available administrative procedures is not excused because an adverse decision was not certain. Valdez argues it should be excused from opposing confidential treatment of later-filed documents because it had already opposed the interpretation of AS 42.06.445(c) adopted in Order 6, which became the basis for similar rulings on later confidentiality petitions. Valdez argues it should not have been required to make identical arguments once the RCA had ruled on that interpretive issue because raising such arguments would have been futile "due to the certainty of an adverse decision." Valdez similarly argues that requesting access to confidential documents under 3 AAC 48.049 would have been futile after the RCA issued Order 6.

---

[82] *See Standard Alaska Prod. Co.* 773 P.2d at 206 (quoting *Ben Lomond, Inc. v. Mun. of Anchorage*, 761 P.2d 119, 121-22 (Alaska 1988)).

Valdez has not convinced us that opposing the later-filed confidentiality petitions would have been futile. The RCA could have concluded that Valdez's arguments applied differently to the later-filed documents than to those at issue in Order 6. The record does not suggest the RCA mechanically relied on Order 6 to grant subsequent confidentiality petitions without deliberation. On the contrary, the RCA extended its deadline for ruling on one of the later-filed petitions for confidential treatment, citing its need to review a "voluminous filing." The RCA also relied on 3 AAC 48.045, not the interpretation of AS 42.06.445(c) it had relied on in Order 6, to treat one of the later-filed documents as confidential. Because the RCA could have decided to deny a confidentiality petition filed after Order 6 but before Order 17, filing such an opposition would not have been futile.[83]

Valdez has not shown that the available administrative remedies for challenging the RCA's confidentiality decisions made after the issuance of Order 6 were inadequate or that the RCA was certain to reject its arguments.[84] Accordingly, Valdez's failure to exhaust the available administrative remedies for challenging the RCA's confidentiality decisions made after the issuance of Order 6 is not excused.

Because Valdez was required to exhaust the available administrative remedies before filing its Order 17 appeal and failed to do so without a valid excuse, we affirm the superior court's order dismissing Valdez's appeal of Order 17.[85]

---

[83]    *Cf. id.* at 209 (concluding exhaustion was not futile where an adverse decision was "highly possible" rather than certain).

[84]    *Cf. Eidelson*, 645 P.2d at 181 (excusing failure to exhaust administrative remedies where pursuing those remedies "would be futile due to the certainty of an adverse decision").

[85]    *See Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 452 (Alaska 2012) (affirming dismissal for failure to exhaust).

**D.    We Vacate The Award Of Attorney's Fees.**

Because we reverse the order dismissing Valdez's appeal of Order 6, we decline to address whether Valdez is a constitutional claimant exempt from paying attorney's fees arising from its appeal.  Instead, we vacate the award of attorney's fees and remand for further proceedings to determine which parties, if any, are entitled to attorney's fees in the consolidated appeal.[86]

## V.    CONCLUSION

We AFFIRM the superior court's dismissal of Valdez's appeal of Order 17.  We REVERSE the dismissal of Valdez's appeal of Order 6.  We VACATE the award of attorney's fees.  We REMAND for further proceedings consistent with this opinion.

---

[86]    *See* Alaska R. App. P. 508(e)(4) (allowing award of "20% of . . . actual attorney's fees" to "the prevailing party" in certain appeals, subject to exceptions).